**VAN HALEN MUSIC, et al., Plaintiffs,**

v.

**Edwin T. PALMER, et al., Defendants.**

**Civ. No. 85–5074.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Jan. 24, 1986.

---

R. Steven Jones of Wright, Lindsey & Jennings, Little Rock, Ark., and John B. Nelson of Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for plaintiffs.

Larry Froelich, Fayetteville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This action for copyright infringement under Title 17 of the United States Code is currently before the court on plaintiffs' motion for summary judgment. Plaintiffs allege that the defendants publicly performed five copyrighted musical compositions at a Fayetteville private club known as The Gazebo on June 15 and 16, 1984. The court has jurisdiction of the cause pursuant to 28 U.S.C. § 1338(a).

### Infringement

A. Congress granted owners of copyrighted musical works exclusive rights to publicly perform their copyrighted compositions. *See* 17 U.S.C. § 106(4). To establish

a *prima facie* case for infringement of copyright in musical compositions, a plaintiff must prove the following five elements:

(1) the originality and authorship of the compositions involved;

(2) compliance with all formalities required to secure a copyright under Title 17, United States Code;

(3) that plaintiffs are the proprietors of the copyrights of the compositions involved in this action;

(4) that the compositions were performed publicly for profit [by the defendants]; and

(5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

*Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 912 (D.Conn.1980).

A *prima facie* case as to the first three elements may be made by submitting certified copies of copyright registration certificates and any subsequent assignments. *Fourth Floor Music, Inc. v. Der Place, Inc.*, 572 F.Supp. 41, 43 (D.Neb.1983); *Remick Music Corp. v. Interstate Hotel Co.*, 58 F.Supp. 523, 531 (D.Neb.1944), *aff'd*, 157 F.2d 744 (8th Cir.1946), *cert. denied*, 329 U.S. 809, 67 S.Ct. 622, 91 L.Ed. 691 (1946) *reh'g denied*, 330 U.S. 854, 67 S.Ct. 769, 91 L.Ed. 1296 (1947).

B. In considering plaintiffs' motion for summary judgment, we note that summary judgment should be granted only when there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The court in making its determination must view the facts in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences to be drawn from the facts. *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620 (8th Cir.1981). It is an extreme remedy and not to be granted unless the "movant has established his right to a judgment with such clarity as to leave

no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Bellflower v. Pennise*, 548 F.2d 776 (8th Cir.1977). However, summary judgment may well be appropriate in this type of case. *See, e.g., Fourth Floor Music, Inc., supra; Boz Scaggs Music, supra;* and *KECA Music, Inc. v. Dingus McGee's Co.*, 432 F.Supp. 72 (W.D.Mo.1977).

C. Based upon the pleadings, affidavits and depositions submitted to the court, we find that there is no genuine issue as to any of the following material facts:

The Gazebo is a private club which is owned and operated by Gazebo Association, Inc., a nonprofit corporation organized under Arkansas law. Essentially a dance club, the Gazebo is open to any of its approximately 1600 members who paid a $10.00 membership fee and to nonmember guests who pay a $3.00 cover charge. The club serves mixed drinks, beer and wine; it hires a disc jockey (DJ) who plays recorded dance music. At all times pertinent to this action, defendant Edwin T. Palmer, Jr., has been president and manager of the Gazebo.[1] In that capacity he makes management decisions for the club and directs its daily operation. (Palmer deposition at 14). Among his duties as manager of the club, Mr. Palmer was responsible for making or approving personnel decisions (Palmer dep. at 8), setting wage and salary levels (Palmer dep. at 8–9), hiring DJs (Palmer dep. at 9), booking any live entertainment (Palmer dep. at 11–12), reviewing and approving membership applications (Palmer dep. at 16), setting cover charges for nonmembers (Palmer dep. at 17), and opening the club for business (Palmer dep. at 15). Mr. Palmer indicated that although each DJ chose the music for any particular evening, he as manager had final say over the type of music played. (Palmer dep. at 15).

In addition to his management duties, Mr. Palmer signed the application for a

---

1. Mr. Palmer was also one of the incorporators of the Gazebo Association, Inc., and is a member of its Board of Directors.

private club permit (Dep.Ex. 8) and the application for renewal of the permit (Dep.Ex. 2); he was listed as the permittee on the permit itself (Dep.Ex. 1). Mr. Palmer signed the lease for the club premises as president of the Gazebo Association, Inc., and individually as guarantor (Dep.Ex. 3).

Mr. Palmer admitted that he had been in contact with ASCAP [2] on a number of occasions prior to June of 1984, although he could not remember the exact number or dates of the contacts. Communications between ASCAP representatives and Mr. Palmer generally involved attempts to persuade Mr. Palmer to purchase a licensing agreement for use of songs copyrighted by ASCAP members. *See* deposition exhibits 5 and 6. Mr. Palmer was frequently advised of the necessity for securing a license and the consequences of his failure to do so. Mr. Palmer made the decision to refuse to purchase a licensing agreement (Palmer dep. at 27) and usually threw away correspondence from ASCAP (Palmer dep. at 31). The Gazebo never secured a license to perform musical works of ASCAP members.

On June 16, 1984, two ASCAP investigators visited the Gazebo during its business hours. Over a period of approximately four hours the investigators listed each song played by the DJ and, when known, the recording artist. The inspection reports revealed that the following four ASCAP songs were played during the time the investigators were present:

| | | |
|---|---|---|
| (1) | When Doves Cry | Prince Nelson (a/k/a Prince) |
| (2) | 1999 | Prince Nelson |
| (3) | Miss Me Blind | George O'Dowd (a/k/a Boy George), Michael Craig, Jonathan Moss, Roy Hay (a/k/a Culture Club) |
| (4) | Easy | Lionel Ritchie [3] |

*See* affidavits of Betty Boswell and Ronald Boswell. By affidavit of counsel, plaintiffs have produced copies of certificates of copyright registration and, where necessary, assignments of copyright which demonstrate that plaintiffs are owners of copyrights for the above listed compositions. The defendants have not disputed this fact. Neither have they claimed that they ever held a license nor secured in any other fashion permission to perform copyrighted musical works.

D. Based upon our findings that the foregoing facts are essentially undisputed, we must conclude that plaintiffs have established that their copyrights on the four listed songs have been infringed. Because the defendants have offered no substantive evidence or argument which would raise any genuine issue of material fact, we find that plaintiffs Controversy Music, Virgin Music, Inc., Jobete Music Co., Inc., and Brockman Enterprises, Inc., are entitled to summary judgments on their claims for copyright infringement.

### Liability

By their amended pleadings, plaintiffs seek to impose liability on the Gazebo Association, Inc., Mr. Palmer and Shary Palmer. It is well established that "one may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." The imposition of

---

**2.** The court in *Boz Scaggs Music, supra,* at 911, described the American Society of Composers, Authors and Publishers (ASCAP) as an unincorporated association of over 23,000 members which on behalf of its members "licenses commercial radio and television stations, restaurants, nightclubs, and other establishments for non-dramatic public performances of copyrighted musical compositions owned by the members. If a licensee fails to pay the fees properly owed to ASCAP and efforts to resolve the delinquency or breach are unsuccessful, ASCAP terminates its license with that user."

**3.** In their second amended complaint plaintiffs contend that Bad, Bad Leroy Brown by Jim Croce was played at the Gazebo on June 15, 1984. However, the only evidence submitted by plaintiffs concerns music performed on June 16. Having carefully reviewed the affidavits regarding that night's performances, we find no indication that any version of Bad, Bad Leroy Brown, recorded or otherwise, was ever performed at the Gazebo. We must therefore conclude that plaintiffs Blendingwell Music, Inc., and MCA, Inc., have not made a *prima facie* case of copyright infringement. Their claim will be dismissed.

liability on a controlling individual is based upon the belief that the individual is in a position to control the conduct of the entity which is the "primary" infringer. (citations omitted). *Fourth Floor Music, supra,* at 43. Vicarious liability may even be imposed on a controlling individual who has no knowledge of infringement. *Boz Scaggs Music, supra,* at 914.

■ In *Fourth Floor Music* liability was imposed on a corporate stockholder who exercised "a good bit of control over the day-to-day operations" of the infringing night club. In *Boz Scaggs* the court found that a corporate vice president and full-time manager of a radio station was jointly liable with the corporation because he had a direct stake in the financial success of the station and he oversaw the station's daily operation. Applying this rationale to the uncontroverted facts in this case, we find that Mr. Palmer had the requisite control and financial stake to make him jointly liable with the Gazebo Association, Inc., for the infringing activities. The defendants' arguments against imposition of individual liability are irrelevant under copyright law.

■ There appears to be no evidence, however, that Ms. Palmer, as secretary of the corporation, exercised any significant control over the club's operation. Her duties appear to have been entirely administrative. There is no indication that she made or participated in any decision regarding the purchase of an ASCAP license. Therefore, we find no basis for imposing liability on Ms. Palmer.

### Relief

A. Under 17 U.S.C. § 502(a), "Any court having jurisdiction of a civil action under this title may ... grant ... final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Having concluded that the defendants infringed the copyrights in the four compositions listed above, the court will enjoin the defendants from any further infringement of those works.

B. Pursuant to 17 U.S.C. § 504(a), plaintiffs may recover actual damages and profits or statutory damages. By their prayer for relief, plaintiffs have elected to recover statutory damages which the court may impose in the amount it considers just. 17 U.S.C. § 504(c)(1). Statutory damages may range from $250.00 to $10,000.00 for each incident of infringement. *See* section 504(c)(1).

■ By the affidavit of Alan J. Pecora, district manager of ASCAP, plaintiffs assert that the licensing fees for the Gazebo from September 1, 1980, through December 31, 1985, would have been $5,045.41 and that ASCAP spent $610.87 in attempting to secure a license. In light of the facts of this case, we find that plaintiffs should recover the sum of $1,500.00 for each of the listed works for a total of $6,000.00. In addition to statutory damages, plaintiffs may also recover costs and attorney's fees under 17 U.S.C. § 505. We find that plaintiffs are entitled to recover their costs in the amount of $610.87.

■ In regard to recovery of attorney's fees, we note those factors cited in *Boz Scaggs Music, supra,* at 915, which may justify *denial* of reasonable attorney's fees:

(1) The presence of a complex or novel issue of law litigated by the defendants in good faith;

(2) Defendants' status as innocent rather than willful or knowing infringers;

(3) Bad faith on plaintiffs' part in prosecuting the action; or

(4) A good faith attempt by the defendants to avoid infringement.

We find that none of these justifications are present in this case. Apart from their allegations that ASCAP attempted to collect its license fee like "a bunch of gangsters," the defendants offer no other compelling reason to deny an award of attorney's fees. Based upon the record before the court, Mr. Palmer's attitude toward securing a license to perform copyrighted music might best be regarded as cavalier.

Counsel for plaintiffs have submitted an affidavit reflecting fees of $4,873.00 and $528.32 in costs for Jackson, Walker, Winstead, Cantwell & Miller, and $4,085.29 for local counsel Wright, Lindsey & Jennings.

Considering all the facts in this case, we believe that a reasonable attorney's fee of $3,240.00 plus $528.32 in costs should be awarded to plaintiffs for representation by the Jackson, Walker, Winstead, Cantwell & Miller law firm. A reasonable attorney's fee for local counsel will be approved upon submission of a statement of time and costs expended on this matter. The court will take that issue under advisement until such a statement can be submitted.

A separate order summarizing the findings and conclusions of the court will be concurrently entered with this memorandum opinion.