**Ric OCASEK, Bruce Springsteen, Ackee Music, Inc. and Van Halen Music, Plaintiffs,**

v.

**Wanda J. HEGGLUND, Defendant.**

**No. C86–1031–B.**

United States District Court,
D. Wyoming.

June 12, 1987.

James W. Owens, Casper, Wyo., for plaintiffs.

Donald J. Sullivan, Cheyenne, Wyo., Frank D. Peasley, Douglas, Wyo., for defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER

BRIMMER, Chief Judge.

This matter came before the Court on the plaintiffs' appeal of the United States Magistrate's order granting the defendant's motion to compel the plaintiffs to attend their own depositions and denying the plaintiffs' motion for a protective order. The Court, having reviewed the pleadings and being fully advised of the premises, FINDS and ORDERS as follows:

This is an action for copyright infringement brought by four copyright owners against the owner and operator of a dance hall in Douglas, Wyoming. The plaintiffs allege that five (5) musical compositions owned by them were publicly performed at the defendant's establishment on February 1, 1985 and/or February 2, 1985 without their authorization and thus in violation of their copyrights. The plaintiffs seek relief as provided for by the United States Copyright Law, 17 U.S.C. § 101 et seq., including an injunction against further infringing performances, 17 U.S.C. § 502, statutory damages of not more than $10,000.00 nor less than $250.00 for each infringement, 17 U.S.C. § 504(c)(1), and costs, including a reasonable attorney's fee, 17 U.S.C. § 505.

On February 17, 1987, the defendant served notice on the plaintiffs that she intended to take their depositions in Cheyenne, Wyoming on March 23 and 24, 1987. At the initial pretrial conference before the United States Magistrate on March 17, 1987, the plaintiffs' counsel indicated that the plaintiffs objected to the taking of their depositions and that they would not appear. Prior to the date of the scheduled depositions, the defendant filed a motion to compel the plaintiffs' attendance at the depositions, and the plaintiffs filed a motion for a protective order to prohibit the defendant from taking their depositions.

On March 18, 1987, the Magistrate issued an order granting the defendant's motion to compel and denying the plaintiffs' motion for a protective order. The Magistrate held that a plaintiff who elects to file litigation in this Court is obligated, absent clear showing of ill health, to appear within the District of Wyoming and be deposed. He further held there existed genuine areas of legitimate inquiry about which the defendant had an absolute right to make discovery of the plaintiffs, including but not limited to the questions of the identity and/or substantial similarity of the music at issue in this litigation, the nature and extent of damages, the nature and extent of the claimed serious and continuing injuries and harms to the plaintiffs and diverse other factual areas. The plaintiffs appeal from this order.

This Court may reverse a magistrate's pretrial order if it has been shown to be clearly erroneous or contrary law. 28 U.S.C. § 636(b)(1)(A). For the reasons stated below, the Court finds that the magistrate's order granting the defendant's motion to compel and denying the plaintiffs' motion for a protective order must be reversed.

The plaintiffs are members of the American Society of Composers, Authors and Publishers (ASCAP). As explained below, due to the difficult nature of enforcing a copyright, copyright owners have ceded to ASCAP certain powers of enforcement such that discovery which is considered reasonable and routine in most situations is not so in copyright infringement actions involving ASCAP or like organizations.[1]

---

1. For example, Broadcast Music, Inc. (BMI) provides services similar to ASCAP. *See, Broad-*

The purpose of ASCAP is to enforce the copyright for the owner. In the area of musical composition copyright, the need for this type of service is particularly acute. As the United States District Court for the Southern District of New York has explained,

> Prior to ASCAP's formation in 1914 there was no effective method by which composers and publishers of music could secure payment for the performance for profit of their copyrighted works. The users of music, such as theaters, dance halls and bars, were so numerous and widespread, and each performance so fleeting an occurrence, that no individual copyright owner could negotiate licenses with users of his music, or detect unauthorized uses. On the other side of the coin, those who wished to perform compositions without infringing the copyright were, as a practical matter, unable to obtain licenses from the owners of the works they wished to perform. ASCAP was organized as a "clearinghouse" for copyright owners and users to solve these problems.

*Columbia Broad. Sys., Inc. v. American Soc. of Comp.*, 400 F.Supp. 737, 741 (S.D.N.Y.1975). The Supreme Court has also recognized the copyright owner's need for some other party to enforce its copyright, stating that

> Because a musical composition can be "consumed" by many different people at the same time and without the creator's knowledge, the "owner" has no real way to demand reimbursement for the use of his property except through the copyright laws *and* an effective way to enforce those legal rights. *See Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 162, 95 S.Ct. 2040, 2047, 45 L.Ed.2d 84 (1975). It takes an organization of rather large size to monitor most or all uses and to deal with users on behalf of the composers. Moreover, it is inefficient to have too many such organiza-

tions duplicating each other's monitoring of use.

*Broadcast Music, Inc. v. CBS*, 441 U.S. 1, 19 n. 32, 99 S.Ct. 1551, 1562 n. 32, 60 L.Ed.2d 1 (1978). Thus it is acknowledged by most, and taken for granted by some, that ASCAP, or some similar organization, will enforce a composer's or publisher's copyright.

Typically, composers enforce their copyright via membership in ASCAP. As part of the terms of the membership agreement, the copyright owner grants to ASCAP a non-exclusive right to license public performances of the member's copyrighted musical compositions.[2] The membership agreement authorizes ASCAP to prevent the infringement of the copyright, to act as the member's attorney-in-fact and to litigate and take all necessary legal actions to prevent unauthorized public performances of the member's copyrighted musical works and to collect damages for infringements.

In order to accomplish this rather formidable task,

> ASCAP provides its members with a wide range of services. It maintains a surveillance system of radio and television broadcasts to detect unlicensed uses, institutes infringement actions, collects revenues from licensees and distributes royalties to copyright owners to copyright owners in accordance with a schedule which reflects the nature and amount of the use of their music and other factors.

*Columbia Broad. Sys., Inc. v. American Soc. of Comp.*, 400 F.Supp. at 742. ASCAP also employs a number of field agents who monitor unlicensed, local entertainment establishments to check for unauthorized uses of its members' compositions. In short, ASCAP handles virtually every aspect of enforcing the member's copyright, from licensing users to litigating unauthorized uses, and the copyright owner is virtually uninvolved with the actual en-

---

*cast Music, Inc. v. CBS Inc.*, 1983–2 Trade Cas. (CCH) ¶ 65–551 (S.D.N.Y. July 20, 1983) [Available on WESTLAW, DCT database].

**2.** Inasmuch as ASCAP's right is non-exclusive, the copyright owner may enforce his right concurrently with ASCAP.

forcement activities; ASCAP members typically have no personal knowledge of infringements on their copyrights, but are completely dependent on ASCAP to protect their rights.

Yet for all of ASCAP's broad power to enforce its members' copyrights, it cannot bring an infringement suit in its own name. ASCAP's Achilles' heel, if it has one, is that it lacks standing to sue for infringement of its members' copyrights. *See, e.g., Broadcast Music, Inc. v. CBS,* 1983–2 Trade Cas. (CCH) ¶ 65,661 (S.D.N.Y. July 20, 1983) [Available on WESTLAW, DCT database]; *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 526 F.Supp. 1187, 1190 (S.D.N.Y.1981), *rev'd and remanded in part on other grounds, aff'd in part,* 697 F.2d 27 (2d Cir.1982).

ASCAP's rather odd status as ghost-plaintiff is due to the combination of copyright and antitrust laws. The Copyright Act has always specified that only the copyright owner, or the owner of exclusive rights under the copyright, as of the time the acts of infringements occur, has standing to bring an action for infringement of such rights; a non-exclusive licensee does not have standing. 17 U.S.C. § 501(b). Prior to 1950, ASCAP did operate as an exclusive licensee of the copyright owners. However, in response to antitrust suits brought by some ASCAP licensees, the government amended a prior consent decree between ASCAP and itself (also in response to antitrust litigation) such that after 1950, ASCAP was prohibited from acquiring exclusive performing rights and was thus limited solely to non-exclusive rights. *United States v. ASCAP,* 1950–51 Trade Cas. (CCH) ¶ 62,595 (S.D.N.Y.1950); *see also, Buffalo Broadcasting v. American Soc. of Composers,* 744 F.2d 917 (2d Cir.1984). The cumulative effect of these various laws and rights is that while AS-CAP bears the primary responsibility for enforcing its members' copyrights and has authority to bring enforcing lawsuits on behalf of its members, it must remain a non-exclusive licensee and, therefore, cannot bring the suit in its own name. This dichotomy between ownership and enforcement of copyrights creates this rather unique situation wherein the plaintiff has little or no information about a lawsuit to enforce his or her rights while a non-party, ASCAP, is fully informed, available and responsible for the legal action.

In this case, as is typical of most ASCAP-assisted infringement suits, two ASCAP investigators visited the defendant's establishment in Douglas, Wyoming, on February 1 and 2, 1985. *See, e.g., Stone City Music v. Thunderbird, Inc.,* 116 F.R.D. 473 (N.D.Miss.1987). They noted which of their members' compositions were performed and subsequently submitted a written report to their regional director. Based on this report and ASCAP's own records that the defendant was not licensed by it, ASCAP initiated this lawsuit for copyright infringement on behalf of their members, the plaintiffs herein. Bearing this in mind, we can now confront the issue of whether or not the plaintiffs must submit to oral depositions.

Under the Federal Rules of Civil Procedure, the right to take a deposition is limited by Rules 26(b)(1) and 26(c). Rule 26(b)(1) provides that, *inter alia,* discovery methods shall be limited by the court if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; ... or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources and the importance of the issues at stake in the litigation. The court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision (c).

Fed.R.Civ.P. 26(b)(1). Pursuant to Rule 26(c), the court may grant a protective order restricting discovery if it finds that "justice requires (the court) to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." The rule further provides that the court may order, *inter alia,* that discovery not be had; that the discovery may be had only on specified terms and conditions, including a designation of the time or place; or that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery. Fed.R.Civ.P. 26(c)(1)–(3).

This most recent incarnation of Rule 26 was created in 1983 and represents a significant change in policy and attitude concerning judicial involvement with discovery:

> The rule contemplates greater judicial involvement in the discovery process and thus acknowledges the reality that it cannot always operate on a self-regulating basis. (citation omitted). In an appropriate case the court could restrict the number of depositions, interrogatories, or the scope of a production request. But the court must be careful not to deprive a party of discovery that is *reasonably necessary* to afford a fair opportunity to develop and prepare the case.

Notes of Advisory Committee on Rules, Rule 26, 1983 Amendment.

The 1983 amendments to Rule 26 were intended to encourage greater judicial scrutiny of the reasons for proposed discovery and greater judicial control over discovery. As the Advisory Committee explained,

> The purpose of discovery is to provide a mechanism for making relevant information available to the litigants.... Thus *the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses.* All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.

*Id.* (emphasis added) Particularly in regard to the courts' expanded powers under 26(b),

> The objective is to guard against redundant or disproportionate discovery by

giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subject of inquiry. *The new sentence is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse....*

> The first element of the standard, Rule 26(b)(1)(i), is designed *to minimize redundancy in discovery and encourage attorneys to be sensitive to the comparative costs of different methods of securing information.* Subdivision (b)(1)(ii) also seeks to reduce repetitiveness and to oblige lawyers to think through their discovery activities in advance so that full utilization is made of each deposition, document request, or set of interrogatories. The elements of Rule 26(b)(1)(iii) address the problem of discovery that is disproportionate to the individual lawsuit as measured by such matters as its nature and complexity, the importance of the issues at stake in a case seeking damages, ... and the significance of the substantive issues, as measured in philosophic, social, or institutional terms.

*Id.* (emphasis added); *See also,* 4 Moore's Federal Practice P 26.71 (1986) *see also Marrese v. Am. Academy Ortho. Surgeons,* 726 F.2d 1150 (7th Cir.1984).

Despite these directives from the Advisory Committee in 1983, no determinative standard or set of criteria for issuing protective orders has emerged. The Court notes that prior to and subsequent to 1983, courts have followed a variety of rationales, particularly in regard to restricting the taking of depositions. In regard to limitations on the courts' power to deny deposition requests at least prior to 1983, there was a presumption against disallowing a deposition unless "the information sought was wholly irrelevant and could have no possible bearing on the issue," and a witness could not escape "examination by claiming that he had no knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test his lack of knowledge." 8 C. Wright, A. Miller

& E. Cooper, *Federal Practice and Procedure* § 2037 (1970). On the other hand, a number of district courts, most notably in copyright infringement cases such as this, have granted protective orders regarding taking depositions based on consideration of whether or not the particular deposition was necessary to a "full and fair resolution" of the issues; this necessarily entailed the court's examining whether the information sought was relevant and whether the proposed deponent could supply that information. *See, Stone City Music v. Thunderbird, Inc.,* 116 F.R.D. 473, (N.D.Miss.1987); *Jones v. New Mexico Vision, Inc.,* No. 82–463–C (D.N.M. June 24, 1983); *Tauripin Tunes v. Atwater Kent, Inc.,* No. 82–159 (D.Vt. Nov. 17, 1982); *Warren Casey v. Bowman,* C.A. No. 79–1246 (D. Idaho February 26, 1980); *Russell-Cason Music v. Johnson,* C.A. No. 880 (M.D.Ga. August 23, 1971); *Cromwell Music, Inc. v. Ruben Burgue & Margaret Burgue,* No. 6D–218 Civ.T. (M.D.Fla. Sept. 20, 1968); *aff'd without opinion,* 435 F.2d 169 (5th Cir.1970). Finally, in regard to protective orders in general, the Tenth Circuit has balanced the interests of the parties. At least where it is conceded that the information sought is relevant, "we are concerned with the burden imposed upon the responding party if a protective order is not granted as compared with the burden imposed upon the requesting party if a protective order imposing conditions is granted." *In Re Coordinated Pretrial Proceedings, Etc.,* 669 F.2d 620, 623 (10th Cir.1982). Again, this comparison of burdens necessitates determining whether the requesting party truly needs the information sought, whether the responding party has that information and whether the type of discovery requested is necessary in light of the burden imposed on the responding party.

■ In consideration of the courts' duty to affirmatively curtail abusive discovery and its obligation to respect the parties' right to discover facts which facilitate the development of their respective cases, the Court finds that the standard for granting a protective order under Rule 26(c) includes consideration of the following (1) whether the information sought is relevant to the issues in the case, (2) whether the proposed source of the information is likely to have that information, and (3) whether the preferred form of discovery is necessary for obtaining the information. Examination of these factors indicates whether the proposed discovery would subject a party or person to annoyance, embarrassment, oppression, or undue burden or expense such that justice requires the court to protect him from it in accordance with Rule 26(c).

Applying this standard to these circumstances, i.e., request to depose plaintiffs in a copyright infringement suit who are members of ASCAP, the Court finds that the plaintiffs are entitled to a protective order pursuant to Rule 26(c)(3).[3] The reasons for which the magistrate and the defendant assert that the plaintiffs must be deposed constitute information that is either irrelevant, not known by the plaintiffs or discoverable via a less costly or burdensome method.

The magistrate ordered the plaintiffs be deposed to discover information about the identity and/or substantial similarity of the music at issue and the nature and extent of

---

**3.** While it is no doubt true, as the plaintiffs contend, that courts grant these orders routinely in precisely these types of cases, we were unable to find any published opinions on the subject. Furthermore, although all of the unpublished orders submitted to the Court conclude that the plaintiffs' depositions should not be taken, they fail to cite any authority or a unified standard in support of their respective conclusions. Still, in spite of this general lack of an articulated standard, the courts appear to be unanimous in their conclusion that copyright plaintiffs who are protected by ASCAP should not be deposed.

*Stone City Music v. Thunderbird, Inc.,* 116 F.R.D. 473 (N.D.Miss.1987); *Jones v. New Mexico Visions, Inc.,* No. 82–463–C (D.N.M. June 24, 1983); *Tauripin Tunes v. Atwater Kent, Inc.,* No. 82–159 (D.Vt. Nov. 17, 1982); *Warren Casey v. Bowman,* C.A. No. 79–1246 (D. Idaho February 26, 1980); *Russell-Cason Music v. Johnson,* C.A. No. 880 (M.D.Ga. August 23, 1971); *Cromwell Music, Inc. v. Ruben Burgue & Margaret Burgue,* No. 6D–218 Civ.T. (M.D.Fla. Sept. 20, 1968); *aff'd without opinion,* 435 F.2d 169 (5th Cir.1970).

damages and injury. The defendant echoed these concerns at oral argument, contending that she needed to depose the plaintiffs to discover information in regard to damages, proof that the music played was that of the plaintiffs' and plaintiff's present suffering as justification for an injunction.

■ In regard to the issue of identity or substantial similarity, the Court finds that it is irrelevant to this case for infringement. To make out a *prima facie* case for infringement of copyright in musical compositions, a plaintiff need only prove the following:

(1) the originality and authorship of the compositions involved;

(2) compliance with all formalities required to secure a copyright under Title 17, United States Code;

(3) that plaintiffs are the proprietors of the copyrights of the compositions involved in this action;

(4) that the compositions were performed publicly for profit (by the defendant); and

(5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

*Van Halen Music V. Palmer*, 626 F.Supp. 1163, 1165 (W.D.Ark.1986); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 912 (D.Conn.1980). Moreover, it is well-settled that "A *prima facie* case as to the first three elements listed above may be made by submitting certified copies of copyright registration certificates and any subsequent assignments." *Van Halen Music v. Palmer*, 626 F.Supp. at 1165. Thus, in order to make out their case for infringement, in addition to submitting documentation of their copyrights, the plaintiffs need only prove that their works were performed without authorization. "The degree of similarity to the original is irrelevant if the work is held out to be a performance of the copyrighted work." *George Simon, Inc. v. Spatz*, 492 F.Supp. 836, 838 (W.D.Wis.1980). The Court finds,

therefore, that the plaintiffs may not be deposed in order to establish similarity.

■ Information regarding damages is also irrelevant since the plaintiffs have requested statutory damages pursuant to 17 U.S.C. § 504(c)(1). Since the statute determines what factors should be considered and the exact amount is a matter of the court's discretion, the amount of damages is not a matter subject to proof. The elements to be considered in determining the appropriate amount of such damages include the degree of willfulness of the defendant's conduct, the "savings" reaped by the defendant measured by unpaid license fees, the need to deter the defendant from continuing to infringe, and the public interest in enforcing the copyright law, none of which depend on the extent of injury to the plaintiff. *See, Sailor Music v. Mai Kai of Concord Inc.*, 640 F.Supp. 629 (1986). Thus, in light of the plaintiffs' request for statutory damages, they may not be deposed to determine damages.

■ It is also pointless to depose the plaintiffs as to the nature and extent of their claimed serious and continuing injuries and harms. These items presumably relate to the plaintiffs' request for a permanent injunction against future infringements pursuant to 17 U.S.C. § 502(a). However, in actions such as these, the plaintiff need not establish irreparable injury in order to obtain an injunction. Under § 502(a), "an injunction will issue when there is a 'substantial likelihood of further infringement of plaintiffs' copyrights.'" *Id.* at 634 (quoting *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1295 (D.R.I. 1982)); *see also, Rare Blue Music, Inc. v. Gutadauro*, 616 F.Supp. 1528 (D.Mass. 1985). The Court notes that a history of past infringements and a general resistance to ASCAP's attempts to license her establishment create sufficient grounds for an injunction under the copyright law, *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F.Supp. 629, 634, 635; *Rare Blue Music, Inc. v. Gutadauro*, 616 F.Supp. at 1530; *Milene Music, Inc. v. Gotauco*, 552 F.Supp.

at 1295, and that proof of irreparable injury is therefore irrelevant.

■ As to proof of the unauthorized public performance of the plaintiffs' songs, it is clear that the plaintiffs have no knowledge of these events. As in most infringement cases enforced by ASCAP, ASCAP investigators actually witness the unauthorized public performance of the plaintiffs' songs. These investigators write a report and submit it to their district manager who then submits it to the ASCAP national director. The Court notes that ASCAP followed this standard operating procedure in this case and that all of these ASCAP employees are available to be deposed in this forum. Significantly, the defendant does not argue that the plaintiffs have knowledge of the actual performance. We find, therefore, that the plaintiffs are not the proper or likely source for this admittedly relevant information and that discovery of this information does not justify deposing the plaintiffs. *See, Girlsongs v. J.N.S. Grand, Inc.*, No. 84–C–7890 (N.D.Ill. June 9, 1986) [Available on WESTLAW, DCT database].

In light of the foregoing, the Court finds that if there is, in fact, some relevant information which the defendant can discover from the plaintiffs, she may do so by way of written interrogatories. Deposing the plaintiffs in these types of cases is unduly burdensome and expensive. As the explanation of the power and function of ASCAP reveals, enforcing a copyright, particularly one for a non-dramatic musical composition, is a full time job. In the typical case, the ASCAP employees, not the plaintiff, possess the relevant information for the lawsuit and are available for discovery. By design, the plaintiff knows nothing about and has all but nothing to do with these infringement suits; if the copyright owner had to be available for deposition in every one of his infringement suits, he would spend most of his time attending depositions and consequently, due to this burden and expense would not enforce his rights. The very purpose of ASCAP is to relieve the copyright owner of the time-consuming and expensive task of enforcing his rights; requiring that the owner be deposed defeats this purpose. Although this particular case, by itself, may not seem especially burdensome to the plaintiffs, this case must be viewed as part of the aggregate of all cases in which the plaintiffs must enforce their rights. As a general rule, to allow the defendants to depose the plaintiffs in these types of infringement suits would render the enforcement procedure so costly and burdensome as to preclude the vindication of the principle of copyright. Therefore, the Court must grant the plaintiffs' request for a protective order against the taking of their depositions.

Although the Court remains skeptical that the plaintiffs know anything that will help the defendant in her defense, we respect the presumption in favor of broad discovery. Therefore, although we will grant the plaintiffs' motion for a protective order in regard to the defendant's request to take their depositions, we will also allow the defendant to submit interrogatories to the plaintiffs. The Court will also require that the plaintiffs make available for depositions in Cheyenne, Wyoming, the national and regional directors of ASCAP as well as the ASCAP investigators who have knowledge of the relevant events. Therefore, it is

ORDERED that the magistrate's order be, and the same hereby is reversed. It is further

ORDERED that the plaintiffs' motion for a protective order be, and the same hereby is, granted in accordance with the terms of this order. It is further

ORDERED that the defendant's motion to compel be, and the same hereby is, denied.