**MAJOR BOB MUSIC, Evanlee Music, EMI April Music, Inc., Merilark Music, Blue Moon Music, Famous Music Corporation, and Garwin Music, Inc., Plaintiffs,**

**v.**

**Gertrude STUBBS, Defendant.**

**No. CV 593–47.**

United States District Court, S.D. Georgia, Waycross Division.

March 29, 1994.

Joyce B. Klemmer, Smith, Gambrell & Russell, Atlanta, GA, for plaintiffs.

Dewey Hayes, Douglas, GA, for defendant.

### ORDER

EDENFIELD, Chief Judge.

The Plaintiffs, alleging violations of federal copyright laws, have moved the Court for summary judgment. For the reasons stated herein, the Court **GRANTS** the Plaintiffs' motion.

### BACKGROUND

The Plaintiffs, music publishers and owners of the copyrighted songs at issue, are members of the American Society of Composers, Authors and Publishers ("ASCAP").[1]

---

*Stewart v. Williams*, 243 Ga. 580, 255 S.E.2d 699 (1979).

1. ASCAP, a nonprofit organization, was formed by a small group of composers in 1914

because those who performed copyrighted music for profit were so numerous and widespread, and most performances so fleeting, that as a practical matter it was impossible for the many individual copyright owners to negotiate with and license the users and to detect unauthorized uses. [Therefore,] "ASCAP was organized as a clearinghouse for copyright

owners and users to solve these problems" associated with the licensing of music. *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 4–5, 99 S.Ct. 1551, 1554–1555, 60 L.Ed.2d 1 (1979) (quoting *Columbia Broadcasting System v. ASCAP*, 400 F.Supp. 737, 741 (S.D.N.Y.1975)).

As ASCAP operates today, its 55,000 members grant it

nonexclusive rights to license nondramatic performances of their works, and ASCAP issues licenses and distributes royalties to copyright owners in accordance with a schedule reflecting the nature and amount of the use of

The Defendant, Gertrude Stubbs, is the sole proprietor of the Buck and Doe Corral in Pearson, Georgia, a local "watering-hole" providing alcoholic and non-alcoholic drinks, snack foods, pool tables, a dance floor, jukebox and live entertainment.

Beginning in 1990, ASCAP repeatedly contacted the Defendant in an effort to convince her to purchase a license to perform ASCAP-copyrighted songs. After numerous letters, phone calls and visits and the Defendant's persistent refusal to purchase a license, AS-CAP sent two investigators to the Buck and Doe Corral. On the evening of December 19, 1992, the investigators noted that a two-person band performed live renditions of three songs from the ASCAP repertoire.[2]

The Plaintiffs subsequently filed this suit, maintaining that the Defendant violated their rights as set forth in the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, by publicly performing copyrighted songs without a license to do so. The Plaintiffs seek injunctive relief, statutory damages, costs and attorney fees.

## ANALYSIS

### I. Standard to be Applied at Summary Judgment

The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)

(quoting FED.R.CIV.P. 56 advisory committee's note). The Court's analysis ends "where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law." *Great Lakes Dredge & Dock Co. v. Miller,* 957 F.2d 1575, 1578 (11th Cir.1992); *Real Estate Fin. v. Resolution Trust Corp.,* 950 F.2d 1540, 1543 (11th Cir.1992) (both citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Thus, summary judgment is appropriate where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.,* 932 F.2d 1384, 1387–88 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991). The substantive law governing the action determines whether an element is essential. *E.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1505 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,*

---

their music and other factors.... [ASCAP] operate[s] primarily through blanket licenses, which give the licensees the right to perform any and all of the compositions owned by the members or affiliates as often as the licensees desire for a stated term. Fees for blanket licenses are ordinarily a percentage of total revenues or a flat dollar amount and do not directly depend on the amount or type of music used.

*Id.,* quoted in *International Korwin Corp. v. Kowalczyk,* 855 F.2d 375, 376 n. 1 (7th Cir.1988).

To protect the compositions within its domain, ASCAP has district offices, and the district manager of each office is responsible for contacting establishments in the district where music is played and offering the opportunity to obtain an ASCAP license. When ASCAP discovers that an establishment is playing musical compositions copyrighted by an ASCAP member, the owner of

the business is notified of the copyright infringement and ASCAP offers to license the entity. *See, e.g., Halnat Pub. Co. v. L.A.P.A., Inc.,* 669 F.Supp. 933, 934 (D.Minn.1987).

Almost every domestic copyrighted composition is in the repertory of either ASCAP or of Broadcast Music, Inc., ("BMI"), another non-profit organization which functions much like ASCAP. *Broadcast Music,* 441 U.S. at 5, 99 S.Ct. at 1555.

2. Specifically, the songs were: "If Tomorrow Never Comes", written by Garth Brooks and Kent Blazy; "Heavenly Bodies", written by Elaine Lifton and Gloria Nissenson; and "Burned Like a Rocket" (a/k/a "Burns Like a Rocket") by Gary Burr. (Tools Aff., Moses Aff.) (Pl.'s Mot. for Summ.J., Ex. A, B, C.)

477 U.S. at 323, 106 S.Ct. at 2552; *see Goree v. Winnebago Indus., Inc.*, 958 F.2d 1537, 1539 (11th Cir.1992). The movant typically must discharge this burden by producing evidence that negates an essential element of the nonmovant's claim. *E.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536, 1554 n. 37 (11th Cir.1991). In some circumstances, however, the movant may meet this burden by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Coats & Clark*, 929 F.2d at 608; *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

Only after the movant successfully discharges this initial burden, does the burden shift to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Thompson v. Metropolitan Multi-List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir.1991); *see Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. "Factual disputes that are irrelevant or unnecessary will not be counted." *United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir.1991) (citation omitted); *see Useden v. Acker*, 947 F.2d 1563, 1575 (11th Cir.1991). The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. at 2514; *Gilbert*, 920 F.2d at 882. If the nonmoving party's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then the Court must enter summary judgment in the moving party's favor. *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989). This means that the nonmovant "must set forth specific facts showing that there is a genuine need for trial," *Johns v. Jarrard*, 927 F.2d 551, 555 (11th Cir.1991) (citation omitted), and may not rely solely on the pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [then] there is no genuine issue for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512; *Johns*, 927 F.2d at 556.

In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992); *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir.1991). In assessing the evidence, the Court must avoid weighing conflicting evidence, *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *Ryder*, 943 F.2d at 1523; *Brown v. Hughes*, 894 F.2d 1533, 1536 (11th Cir.), *cert. denied*, 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986), or making credibility determinations. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987). A mere "scintilla" of evidence supporting the opposing party's position, however, will not suffice. *E.g., Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

## II. Plaintiff's Motion

### A. *Copyright Infringement*

"The economic philosophy behind the [constitutional] clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors...." *Mazer v. Stein*, 347 U.S. 201, 219, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954). In order to achieve that end, Congress "grant[ed] valuable, enforceable rights to authors, publishers, etc., without burdensome requirements," *Washingtonian Pub-*

*lishing Co. v. Pearson,* 306 U.S. 30, 36, 59 S.Ct. 397, 400, 83 L.Ed. 470 (1939), among which is the right to sue for infringement. *See* 17 U.S.C. § 101 *et seq.* (1988); *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 912 (D.Conn.1980).

■ In order to establish liability for infringement of copyright in musical compositions, a plaintiff must prove the following elements:

(1) the originality and authorship of the compositions involved;

(2) compliance with all formalities required to secure a copyright under Title 17, United States Code;

(3) that plaintiffs are the proprietors of the copyrights of the compositions involved in the action;

(4) that the compositions were performed publicly [by the defendant]; and

(5) that the defendant had not received permission from any of the plaintiffs or their representatives for such performance.

*U.S. Songs, Inc. v. Downside Lenox, Inc.,* 771 F.Supp. 1220, 1224 (N.D.Ga.1991); *Van Halen Music v. Palmer,* 626 F.Supp. 1163, 1165 (W.D.Ark.1986); *Boz Scaggs Music,* 491 F.Supp. at 912.

The Plaintiffs in this case have met the first three elements by submitting copies of copyright registration certificates, which constitute prima facie evidence of the copyright's validity. 17 U.S.C. § 410(c) (1988). Moreover, the Defendant has not contested the validity or ownership of the Plaintiffs' copyrights. (Def.'s Resp. to Pls.' Mot. for Summ.J. at 4.)

■ With regard to the fourth element, it is well settled that investigators' affidavits that are uncontradicted are conclusive proof of performance. *Broadcast Music, Inc. v. Larkin,* 672 F.Supp. 531, 533–34 (D.Me. 1987); *Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1294 (D.R.I.1982). In this case, it is undisputed that live entertainment

was provided on the evening of December 19, 1992. Furthermore, the Defendant has not offered any evidence to contravene the investigators' affidavits. The Defendant submitted an affidavit by one of the musicians stating that he could "not specifically recall" whether he had performed the songs at issue on the evening of December 19, 1992 (Thomas Aff.), but a statement expressing inability to remember which particular songs were played does not serve to contradict the Plaintiffs' sworn statements that such songs were indeed performed.

■ Additionally, the Defendant's assertion that, if such songs were performed, they were not identical to the copyrighted works is unavailing.[3] This case is not a plagiarism case; rather, the infringing conduct at issue here is the unauthorized public performance of the songs. Therefore, a demonstration that the works played were exactly the same as, or substantially similar to, the copyrighted works is unnecessary. "All that plaintiffs need prove is that their works were performed. The degree of similarity to the original is irrelevant if the work is held out to be a performance of the copyrighted composition." *Ocasek v. Hegglund,* 116 F.R.D. 154, 160 (D.Wyo.1987) (quoting *George Simon, Inc. v. Spatz,* 492 F.Supp. 836, 838 (W.D.Wis. 1980)).

■ In her response to Plaintiffs' motion, the Defendant also alleges that the musicians played "for [their] own gratification and not for the entertainment of Defendant's patrons", (Def.'s Resp. to Pls.' Mot. for Summ.J. at 5), and that the musicians were not employees of the Defendant. Such arguments that the musicians were independent contractors and that the Defendant did not directly profit from their performances, however, do not absolve the Defendant of liability.

Defendant's "no profit" defense stems from 17 U.S.C. section 110(4) (1988), which provides:

---

**3.** Specifically, one of the two band members who performed stated in his affidavit as follows:

Since I do not use printed music or the stage equipment necessary to duplicate the original artist's sound, I improvise by adding my own

lyrics, departing from the original lyrics, altering melodies, repeating choruses, or deleting choruses. My performance is similar in title only to popular compositions.

(Thomas Aff.)

[T]he following are not infringements of copyright:

> ... (4) performance of a nondramatic literary or musical work otherwise than in a transmission to the public, without any purpose of direct or indirect commercial advantage and without payment of any fee or other compensation for the performance to any of its performers, promoters, or organizers ...

*Id.* The Court finds that this defense is inapplicable to this case. Indeed, regardless of whether the alleged infringer actually profited from the performance itself, it is well established that "a profit-making enterprise which publicly performs copyrighted musical compositions is deemed to do so for profit." *U.S. Songs, Inc. v. Downside Lenox, Inc.*, 771 F.Supp. 1220, 1226 (N.D.Ga.1991) (quoting *Gnossos Music v. DiPompo*, 13 U.S.P.Q.2d 1539, 1540, 1989 WESTLAW 154358 (D.Me.1989)). There is no dispute that the Buck and Doe Corral is a "profit-making enterprise." Furthermore, such an enterprise is considered to be "profit-making" even if it never actually yields a profit. *U.S. Songs*, 771 F.Supp. at 1226; *Bourne Co. v. Speeks*, 670 F.Supp. 777, 779 (E.D.Tenn. 1987) (citing *Herbert v. Shanley Co.*, 242 U.S. 591, 595, 37 S.Ct. 232, 233, 61 L.Ed. 511 (1917) (J. Holmes) ("Whether ... [music] pays or not the purpose of employing it is profit and that is enough.")) Lastly, the fact that the establishment may not have paid the performer does not alter the nature of such a profit-making enterprise. *Cass County Music Co. v. Vineyard Country Golf Corp.*, 605 F.Supp. 1536, 1537 (D.Mass.1985) ("[T]he fact that the guitarist was not employed [or paid] by defendant is legally irrelevant.")

■ Importantly, it has long been held that one may be liable for copyright infringement even though she has not herself performed the protected composition. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1161–62 (2d Cir.1971); *Van Halen Music*, 626 F.Supp. at 1166–67; *Boz Scaggs Music*, 491

F.Supp. at 913. Thus, "one may be vicariously liable if [s]he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Boz Scaggs Music*, 491 F.Supp. at 913 (citing *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir.1963)); *Marvin Music Co. v. BHC Ltd. Partnership*, 830 F.Supp. 651, 655 (D.Mass.1993). Vicarious liability may be imposed even when the controlling individual has no knowledge of the infringement. *Van Halen Music*, 626 F.Supp. at 1167; *Fourth Floor Music, Inc. v. Der Place, Inc.*, 572 F.Supp. 41 (D.Neb.1983); *Boz Scaggs Music*, 491 F.Supp. at 913.

■ As sole owner of the Buck and Doe Corral, the Defendant necessarily has the right and ability to control the activities at her establishment. And, certainly, as sole proprietor, the Defendant derives a financial benefit from the operation of the establishment and all activities that take place there. Thus, the Defendant may be held individually liable for copyright infringement.

Finally, the fifth element of infringement, lack of permission, is verified by the affidavit of Barbara King, ASCAP's district manager. (King Aff.) Without a license from ASCAP or any other hint in the record of permission from Plaintiffs, the Defendant had no legal right to authorize, permit or condone performances of the copyrighted compositions.

Accordingly, because the Plaintiffs have successfully demonstrated a prima facie case, which the Defendant has failed to rebut, the Court finds that the Defendant infringed on the Plaintiffs' copyrights on the dates and in the manner set forth in the pleadings, and that summary judgment should be granted against her.

### B. Statutory Damages

■ Under the Act, Plaintiffs may elect to receive statutory damages of not less than $500.00 per infringement or more than $20,000.00, instead of requesting actual damages or profits.[4] 17 U.S.C. § 504(c)(1). In this

---

4. Specifically, 17 U.S.C. § 504(c)(1) provides:
   (c) *Statutory Damages.*
   (1) ... [T]he copyright owner may elect, at any time before final judgment is rendered, to

recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is

action, the Plaintiffs seek statutory damages of $2,000.00 per infringement, or $6000.00 in total statutory damages, which is approximately three times the fee the Defendant would have paid for a license. (Pls.' Mot. for Summ.J. at 14.) (King Aff.)

In interpreting section 504(c), courts have held that the statute vests the trial court with wide discretion to set damages within the statutory limits. Factors to be considered include: (1) the expenses saved and profits reaped by the defendant in connection with the infringements; (2) the revenues lost by the plaintiffs as a result of the defendant's conduct; and (3) the infringer's state of mind—whether willful, knowing or merely innocent. *Nick–O–Val Music Company v. P.O.S. Radio, Inc.*, 656 F.Supp. 826, 829 (M.D.Fla.1987); *Boz Scaggs Music*, 491 F.Supp. at 914. As the Supreme Court stated in *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952), one of the principles to be vindicated in awarding statutory damages is the deterrence of wrongful conduct:

> [A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy.

*Id.* at 233, 73 S.Ct. at 225.

The evidence in the record indicates that, from February 1990 to September 1992, AS-CAP valiantly strove to apprise the Defendant of her potential liability under the copyright laws. Indeed, ASCAP mailed no less than 20 letters to the Defendant, spoke with the Defendant at least 8 times by telephone, and visited the premises on 5 occasions. All of ASCAP's efforts were rebuffed by the Defendant. (King Aff., Ex. A.) In response, the Defendant contends that she was "not made aware of the mandatory nature of the purposes behind the contacts from ASCAP," and that "at no point in time were federal statutes concerning copyright laws shown to . . . [her] or explained to . . . [her] in sufficient detail." (Def.'s Aff.) To the contrary, even a cursory review of the certified letters received by the Defendant belie her contentions, as the letters make patently clear the Defendant's potential liability for permitting unauthorized public performances of copyrighted works. (Pls.' Mot. for Summ.J., King Aff., Ex. A.)

Accordingly, the Court finds that the Plaintiffs' request of statutory damages of $2000.00 per violation, or a total of $6,000.00—an amount approximately three times what the Defendant would have paid to be licensed—is a modest, just and appropriate award under section 504(c)(1).

### C. *Injunctive Relief*

Title 17 U.S.C. section 502(a) provides:

> Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

17 U.S.C. § 502(a) (1988). Pursuant to this statute, Plaintiffs seek an order enjoining the Defendant from performing copyrighted works. "An injunction is properly imposed when there is substantial likelihood of further infringement. . . ." *U.S. Songs*, 771 F.Supp. at 1229 (citing *Hickory Grove Music v. Andrews*, 749 F.Supp. 1031, 1040 (D.Mont. 1990). *See also, Pacific and Southern Co. v. Duncan*, 744 F.2d 1490, 1499 (11th Cir.1984) (past infringement and substantial likelihood

---

liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $500 or more than $20,000 as the court considers just . . .

17 U.S.C. § 504(c)(1) (1988).

of future infringements normally entitle copyright holder to a permanent injunction), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985).

In light of the Defendant's persistent refusal to heed ASCAP's warnings, and her continued operation of the enterprise, the Court finds a substantial likelihood that the Defendant will continue to infringe Plaintiffs' copyrights if an injunction is not issued. Accordingly, the Court hereby ENJOINS the Defendant from further infringing Plaintiffs' copyrights. This injunction shall be permanent, or shall last "until such time as [D]efendant obtain[s] a license" to perform Plaintiffs' copyrighted material. *International Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652, 658 (N.D.Ill.1987), *aff'd*, 855 F.2d 375 (7th Cir. 1988); *Pacific and Southern Co.*, 744 F.2d at 1499–1500.

### D. *Costs and Attorney Fees*

■ The Plaintiffs further request reimbursement for costs incurred in the bringing of this action, including reasonable attorney fees. The Copyright Act provides that the court in its discretion may award costs and attorney fees to the prevailing party:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party.... Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505 (1988).

The Eleventh Circuit has adopted a lenient standard for granting fees, concluding that the statute does not condition an award of costs and fees on the showing of a frivolous suit or a willful infringement:

[w]hile the defendant's good faith and the complexity of the legal issues involved likely would justify a *denial* of fees to a successful plaintiff, a showing of bad faith or frivolity is not a requirement of a grant of fees. Rather, the only preconditions to an award of fees is [sic] that the party receiving the fee be the "prevailing party" and that the fee be reasonable.

*Original Appalachian Artworks, Inc. v. Toy Loft*, 684 F.2d 821, 832 (11th Cir.1982) (citations omitted) (emphasis in original); *Sherry Manufacturing Co. v. Towel King of Florida, Inc.*, 822 F.2d 1031, 1034–35 (11th Cir.1987); *Original Appalachian Artworks v. McCall Pattern Co.*, 825 F.2d 355, 356 (11th Cir. 1987). Additionally, the Eleventh Circuit has held, unlike some circuit courts, that courts should not distinguish between a prevailing plaintiff and a prevailing defendant in awarding fees. *Sherry Manufacturing Co.*, 822 F.2d at 1034–35.

The Supreme Court's recent decision in *Fogerty v. Fantasy, Inc.*, —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), upheld the approach utilized by the Eleventh, Third, and Fourth Circuits, ruling that prevailing plaintiffs and prevailing defendants must be treated alike under section 505. Furthermore, and significantly, the Court rejected the plaintiff's argument that plaintiffs and defendants should be awarded attorney's fees as a matter of course, absent exceptional circumstances:

The word "may" clearly connotes discretion. The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion....

[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. "There is no precise rule or formula for making these determinations," but instead equitable discretion should be exercised....

*Fogerty*, —— U.S. at ——, 114 S.Ct. at 1025 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40).

Wary of the Supreme Court's admonition that attorney fees should not be awarded automatically, or as a matter of course, the Court turns to various factors considered by other courts in ascertaining whether to award attorney fees under the statute. As observed above, the Eleventh Circuit has held that a district court need not find frivolousness nor willful infringement, but may take such factors into consideration. The Third Circuit, in a case cited approvingly by the Supreme Court in *Fogerty*, instructed the district court to examine several nonexclusive

factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir.1986). In a frequently cited district court case, the District Court of Connecticut held that the following factors justified a *denial* of attorney fees to a prevailing plaintiff: (1) the presence of a complex or novel issue of law litigated by the defendant in good faith; (2) the defendant's status as an innocent rather than a willful or knowing infringer; (3) bad faith on plaintiffs' part in prosecuting the action; or (4) a good faith attempt by the defendant to avoid infringement. *Boz Scaggs Music*, 491 F.Supp. at 908. *See also, Original Appalachian Artworks*, 684 F.2d at 832; *Van Halen Music*, 626 F.Supp. at 1167; *Almo Music Corp. v. T & W Communications Corp.*, 798 F.Supp. 392, 394 (N.D.Miss.1992); *Collins Court Music, Inc. v. Pulley*, 704 F.Supp. 963, 968 (W.D.Mo.1988); *Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F.Supp. 958, 963 (N.D.Ill.1985).

The Court finds that the equities in this case justify the award of attorney fees. The Defendant's liability is unquestionable on both the law and the facts; the Defendant repeatedly ignored Plaintiffs' many entreaties and warnings that they were in violation of the law; and the Defendant made no attempt whatsoever to avoid infringement, or to resolve this dispute prior to the com-

mencement of litigation. Indeed, the record before the Court reveals that the Defendant's attitude toward securing a license "might best be regarded as cavalier." *Van Halen Music*, 626 F.Supp. at 1167.

Plaintiffs' counsel submitted an affidavit establishing that attorney fees incurred by Plaintiffs in the prosecution of this action total $4,021.28, including costs of $279.28. (Klemmer Aff.) The Court observes no reason why it should find these fees and costs unreasonable. Accordingly, the Court hereby awards Plaintiffs attorney fees and costs in the amount of $4,021.28.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Plaintiff's motion for summary judgment, and the Clerk of Court is hereby ordered to enter **JUDGMENT** in favor of the Plaintiffs and against the Defendant in the amount of $6000.00 in damages and $4,021.28 in fees and costs. The Defendant is permanently **ENJOINED** from further infringing Plaintiffs' copyrights.

SO ORDERED.