RILTING MUSIC INC., Revelation Music Publishing Corp., Gold Hill Music, Inc., Plaintiffs,

v.

SPEAKEASY ENTERPRISES, INC. and John Magnacca, Defendants.

No. C2–86–0420.

United States District Court, S.D. Ohio, E.D.

Oct. 20, 1988.

John F. Novatney, Jr., Patricia A. Screen, Baker & Hostetler, Cleveland, Ohio, David R. Kelleher, Baker & Hostetler, Columbus, Ohio, for plaintiffs.

Hillard M. Abroms, Abroms & Weisz, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This copyright infringement action is before the Court on plaintiffs' motion for a summary judgment against John Magnacca, one of the defendants in this case. The other defendant, Speakeasy Enterprises, Inc., owner of Guido's Speakeasy, has been in receivership in the Franklin County, Ohio, Court of Common Pleas, and this Court continues to stay its proceedings against that defendant. As to defendant Magnacca, the Court notes that it is undisputed that he is not the subject of the receivership and that the receivership as to Speakeasy is no bar to the Court ruling on plaintiffs' motion for summary judgment against Magnacca.

Also uncontested in this case are the essential elements of a copyright infringement action, for defendant Magnacca has not challenged 1) either the creation or the originality of the music at issue; 2) that the copyright formalities set forth in Title 17 of the United States Code were fulfilled; 3) that the plaintiffs hold proprietary rights in the copyright; 4) that the music was publicly performed for profit at Guido's Speakeasy on January 10, 1986; and 5) that the plaintiffs did not grant defendants permission for the performances in question. On these facts, the plaintiffs have generally established their right to summary judgment, save only for the question of defendant Magnacca's personal liability, a matter which requires further exploration. For the reasons set forth below, the Court resolves that question in favor of the plaintiffs and grants their motion for summary judgment.

## I. FACTS

This action was brought by Rilting Music, Inc., Revelation Music Publishing Corp., and Gold Hill Music, Inc., alleging a violation of copyright by the defendants on the evening of January 10–11, 1986. The plaintiffs allege that their copyrighted music, specifically "Send in the Clowns" and "Suite: Judy Blue Eyes", was used in an unauthorized public performance in Guido's Speakeasy on the date in question.

The following facts are uncontested. The plaintiffs are members of ASCAP (American Society of Composers, Authors and Publishers), to whom they have granted a nonexclusive right to license public performance of their copyrighted compositions. The defendants at one time entered into a contract with ASCAP covering their establishment but that the contract was not renewed by the defendants despite many efforts by the plaintiffs. Subsequent to the nonrenewal, and contemporaneous with a series of efforts by ASCAP to secure its right through correspondence and conversations with defendant Magnacca, the defendants entered into what they describe as a series of "management contracts" for Guido's Speakeasy to be operated by lessees who were potential purchasers. At no time did defendant Magnacca disclose to any of the lessees the effort of ASCAP to

secure its rights, despite the fact that he was present two days a week as a "bartender" to make sure that the lessees did not jeopardize the defendants' interests. The discovery yields unrebutted testimony that on January 10–11, 1988, ASCAP investigators visited Guido's Speakeasy and documented the live playing by an ensemble of the plaintiffs' copyrighted compositions.

## II.  ISSUES PRESENTED

The matter is before the Court on plaintiffs' motion for a summary judgment, attached exhibits and brief.  In addition to a general denial of the central allegations, the defendants assert defenses and affirmative defenses (1) that the complaint fails to state a claim upon which relief may be granted, and (2) of estoppel, laches, waiver, and statute of frauds.

In response to plaintiffs' motion for summary judgment, defendant Magnacca asserts:  1) that the facts are identical for both defendants and it would be "improper" for the Court not to try both defendants simultaneously;  2) that at the time of the alleged infringement Magnacca had contracted to sell the business, was merely a bartender, and had no control or beneficial interest in the premises, which were being operated by a lessee;  3) that he virtually concedes the underlying claim of infringement but that a genuine issue of material fact remains as to Magnacca's liability.  An affidavit is appended to the reply brief.  No cases are cited.

## III.  JURISDICTION AND VENUE

As a threshold matter, the Court finds that is has original jurisdiction in this matter pursuant to 28 U.S.C. § 1338(a), the underlying allegation being an infringement of rights secured under the copyright laws of the United States.  17 U.S.C. § 101 *et seq.*  Venue is proper in this district.  28 U.S.C. § 1391.

## IV.  FAILURE–TO–STATE–CLAIM DEFENSE

The defendant asserts that the "complaint fails to state a claim against defendants upon which relief may be granted."

Answer, ¶ 7.  Yet, in no subsequent pleadings or memoranda do defendants offer any argument, suggest any statutory or other reason, or cite any case in support of their contention.

On its face the complaint is consistent with Form 17 of the Federal Rules of Civil Procedure.  Moreover, it also, in clear and unambiguous language, well pleads a violation of rights secured to the plaintiffs under the copyright laws of the United States.  Consequently, the Court finds that this defense is without merit.

## V.  AFFIRMATIVE DEFENSES

The defendants also assert "Defenses and affirmative defenses of Estoppel, Laches, Waiver, and Statute of Frauds."  Answer, ¶ 8.  Apparently defendant Magnacca has abandoned these purported defenses because nowhere are they subsequently elaborated upon.  Nonetheless, the Court will address them.

### A.  Estoppel

Other than the mere and singular mention of the word "Estoppel," the defendant has pointed to no act or omission by the plaintiffs upon which the defendant was entitled to rely and which prevents the plaintiffs from claiming any right.  No argument is made toward that end; no case is cited.  And, upon its own examination of the record the Court finds no impediment to preclude plaintiffs from pursuing any aspect of their claims.  The defendant has not established this affirmative defense, and the Court concludes it is without merit.

### B.  Laches

Other than the mere and singular mention of the word "Laches," the defendant has pointed to no failure by the plaintiffs seasonably to assert their rights;  no argument is made toward that end; no case is cited.  Moreover, the Court's own examination of the record clearly establishes that the plaintiffs diligently pursued their prior claims, that defendant Magnacca disingenuously promised settlement of those claims (Magnacca Dep. at 42–45, 49), and that the

instant action was filed three months and five days after the January 10–11, 1986 performances. The time devoted to the pre-filing efforts at resolution of the copyright infringement claim clearly were reasonable, especially given the public policy favoring voluntary compliance over litigation. *Blendingwell Music, Inc. v. Moor-Law, Inc.,* 612 F.Supp. 474 (D.Del.1985). Given the seasonable filing, the Court concludes that the defendant has not established this affirmative defense and that it is without merit.

### C. Waiver

Other than the mere and singular mention of the word "Waiver," the defendant has pointed to no word, conduct or omission by the plaintiffs which could be construed as a relinquishment of any of their rights; no argument is made toward that end; no case is cited. Further, the Court's own examination of the record reveals an aggressive and unyielding pattern on the part of the plaintiffs to pursue all of their rights. Accordingly, the defendant has not established this affirmative defense and the Court concludes it is without merit.

### D. Statute of Frauds

Other than the mere and singular mention of the phrase "Statute of Frauds," in his Answer, the defendant does not thereafter pursue the matter in any subsequent filing; no case is cited. Perhaps this is because the Statute of Frauds defense is available in contract actions, and copyright infringement is a tort claim. Accordingly, the Court finds that this defense is without merit.

## VI. SUMMARY JUDGMENT

The standard which should guide a trial judge in deciding a motion for summary judgment has undergone some modification in recent years.

In *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) the Supreme Court cautioned that "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. That Court went on to note that "Rule 56(c) provides that the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Id.* at 250, 106 S.Ct. at 2511. "The inquiry," said the Court, is "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* The Court added that "this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. [citation omitted]. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed. [citation omitted]." *Id.* at 250–51, 106 S.Ct. at 2511. Thus, the Court appears to have merged the "genuine issue" standard for summary judgment and the "reasonable jury" standard for a directed verdict: "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

As a practical matter, rule 56(e) provides that:

> ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, plaintiffs' motion and supporting documents must be considered against any *specific facts* that the defendant adduces by way of affidavit or other evidentiary

materials of a type set forth in rule 56(c) but the defendant is not required to depose his own witness. *Celotex Corp. v. Catrett,* 477 U.S. 317, 332, 106 S.Ct. 2548, 2557–58, 91 L.Ed.2d 265 (1986). Still, where a defendant has been deposed, he will not be permitted to create a "genuine issue" by a summary denial in the affidavit that contradicts his deposition. *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969).

## VII. GENUINENESS OF FACTUAL ISSUES

In the case at bar, the plaintiffs have clearly established that their copyrights have been infringed. *Supra,* Part I. The only matter remaining in contention is whether the plaintiffs are entitled to summary judgment against defendant Magnacca, for liability under copyright laws may be joint and several. *Screen Gems–Columbia Music, Inc. v. Metlis & Lebow Corp.,* 453 F.2d 552, 554 (2d Cir.1972).

### A.

It is uncontested that Speakeasy Enterprises, Inc. (hereinafter "corporation") exists for the "sole purpose" of owning and operating Guido's Speakeasy (hereinafter "Guido's"). Magnacca Deposition, at 32. It is also uncontested that defendant Magnacca was and is the president of the corporation and was the on-premises manager of Guido's until May 1984. Magnacca Dep., at 7–11. The owners of the corporation were his wife Christy, John Gates, and John Huffner. Mr. Magnacca owns no stock in the corporation. Magnacca Dep. at 11. While he was manager of Guido's, Magnacca performed the usual management functions of purchasing consumables, paying rent and other expenses, and being in charge of staffing. All of this is uncontroverted.

Plaintiffs maintain through their motion for summary judgment, brief, appended documents, and reply brief that they are entitled to recourse against defendant Magnacca because he, as "the dominant influence in a corporation or partnership, which receives some type of economic benefit from its operation, is jointly and severally liable with the corporation or partnership." Brief in Support of Motion for Summary Judgment, at 8 [*citing Van Halen Music v. Palmer,* 626 F.Supp. 1163, 1167 (W.D.Ark. 1986) and *Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1295 (D.R.I.1982)]. The plaintiffs maintain the "test for finding a corporate officer jointly and severally liable with his corporation for copyright infringement is whether the officer has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." Plaintiff's Brief at 8 [*citing, inter alia, Warner Bros., Inc. v. Lobster Pot, Inc.,* 582 F.Supp. 478, 482 (N.D.Ohio 1984)].

### B.

In the face of the plaintiffs' evidence and citations to authority, defendant Magnacca responds with a Memorandum Contra without any citation to any authority nor challenging the applicability of any of plaintiffs' many citations of authority; instead, counsel relies solely upon an appended affidavit of defendant Magnacca in an effort to establish that "there do indeed exist genuine issues of material fact which are in dispute ... and should not be decided by summary judgment." Memorandum Contra at 5. The accompanying affidavit contains five statements by defendant Magnacca, and the Court deals with each to ascertain whether there is created a genuine issue of material fact (The quoted statements are contained in Exhibit A, attached to Defendant's Memorandum Contra):

(1) "I am a Defendant in the above-captioned case." This is a re-admission of a material fact that is not a contention.

■ (2) "As of May, 1984, I gave up my duties as president and officer of Speakeasy Enterprises, Inc. and assumed a role of employee." However, in a deposition on July 25, 1986, Mr. Magnacca was asked "Do you hold any title in that corporation?" He answered: "President." He was asked "Are you still President?" and he replied "Yes." Magnacca Dep. at 7. He reasserted this subsequently. *Id.* at 9. The Second Circuit was confronted with a similar

situation in deciding whether a genuine issue of fact existed where a party's affidavit conflicted with his deposition. That court said: "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research, supra,* 410 F.2d at 578. The Sixth Circuit concurs that such a juxtaposition creates "no *genuine* issue of material fact ..." *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir.1984) (emphasis in the original). Accordingly, there is no genuine issue of fact that defendant Magnacca is and was, at all times relevant to the copyright infringement allegation, President of the corporation although he now sings a different tune. Further, it is uncontroverted that since May 1984 defendant Magnacca has been an employee at Guido's. That assertion does not conflict with plaintiffs' assertions that he performed other functions.

(3) "On January 10, 1986, I was present at Guido's Speakeasy and was employed as a bartender." The first half of the sentence is a re-admission of an uncontested fact, and so is the second.

■ (4) "On January 10, 1986, I did not choose the musical performers for the night, nor did I have any say as to what they would be performing." The absence of defendant Magnacca's direct role in selection of the performers or the selections performed is not dispositive of plaintiffs' theory of the case. Rather, they proceed along the lines that Magnacca knew of the ongoing infringement and could not avoid either corporate or personal responsibility by establishing a series of management contracts with potential buyers, especially since his regular presence on the premises was to make sure that the operators did not jeopardize the corporation's interests.

■ (5) "Since May, 1984, I have realized no direct financial benefit from Speakeasy Enterprises, Inc." This claimed absence of benefit is a summary assertion which is contrary to Magnacca's own deposition. In both his affidavit and deposition he specifically states that he was "employed" as a bartender in Guido's by those holding management contracts with the very corporation of which he was president. And, his deposition recites that he received income from these duties over the period in question. Magnacca Dep. at 19–20. Thus, he did benefit financially from the copyright infringement even if no money passed from those holding management contracts to the corporation then to him; rather, it went directly to him; and, all the while, he had the corporation's authority, which he exercised from time to time, both to examine the books of the restaurant managers and to dismiss them when they did not perform satisfactorily for the corporation or generate money for it. Magnacca Dep. at 16–17, 18, 19. Thus, while Magnacca was not receiving cash payments directly from *the corporation,* that fact is not material to plaintiffs' alternate theory of liability. In addition, a specific purpose of the management contracts was to "avoid personal and corporate bankruptcy and foreclosure." Magnacca Dep. at 16. Relief from liability is a benefit. Therefore, the Court applies the standard set by the Sixth Circuit in *Biechele, supra,* 747 F.2d at 215, and concludes that defendant Magnacca's summary statements in his affidavit do not create a genuine issue of material fact in the face of his specific statements his deposition.

### C.

■ In addition to defendant Magnacca's acknowledged receipt of direct benefits and expectations of benefits from the ongoing arrangement, including the viability of Guido's which was enhanced by the performances, Magnacca's *own* deposition establishes that he was the dominant influence in the Speakeasy Enterprises/Guido's operation. He had and exercised the authority to enter into management contracts for the operation of Guido's. Magnacca Dep. at 13–16. He had and exercised the authority to inspect those managers' books, *Id.* at 17, although most of his own and the corporation's records "have been destroyed." *Id.*

at 24. He had and exercised the authority to make sure that the corporation's interests were not prejudiced or jeopardized. *Id.* at 27. He had and exercised the authority to undertake sanctions for the failure of the managers to make payments to the corporation. *Id.* at 18–19, 27. He was regularly employed by the managers whose operations he was monitoring on behalf of the corporation, *Id.* at 27, and he was the only officer or principal of the corporation to derive any income from the ongoing operation of Guido's. *Id.* at 27. He continued, long after May 1984, in periodic contact with and under pressure from the plaintiffs regarding unauthorized performances of their works, *Id.* at 49, and took no steps to advise the managers of same. *Id.* at 27, 31–32, 49. (Nor did he seek to join them as co-defendants in this action). He was present and tending bar on January 10, 1986, Magnacca Affidavit, ¶ 1, during the performance in question and, while the manager signed the band, *Id.* at 37, Magnacca was thoroughly familiar with its members. Magnacca Dep. at 34–35, 37, and heard the music that was being played. *Id.* at 36. He had and exercised sole authority to abrogate, cancel, and rescind management contracts. *Id.* at 17–19.

In *Gershwin Publishing Corporation v. Columbia Artists Management, Inc.*, 443 F.2d 1159 (2d Cir.1971), the Second Circuit, citing its earlier holding in *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir.1963), set forth a two-prong test that copyright infringement liability extends to one who has a "right and ability" to oversee the activity if he has a "direct financial interest." *Gershwin*, 443 F.2d at 1162, comporting with *Shapiro, Bernstein*, 316 F.2d at 307. The *Gershwin–Shapiro, Bernstein* standard has been followed in dozens of cases, including several cited by the plaintiffs, namely *Van Halen, supra,* 626 F.Supp. at 1167; *Milene Music, supra,* 551 F.Supp. at 1295; *Warner Bros., supra,* 582 F.Supp. at 482; *Fourth Floor Music, Inc. v. Der Place,* 572 F.Supp. 41, 43 (D.Nebr.1983); and *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908 (D.Conn. 1980). The defendant has not challenged the cited cases and offers no standard of

his own for the Court to follow. The Court adopts the *Gershwin–Shapiro, Bernstein* standard.

In his deposition, defendant Magnacca makes it clear that he had the right and ability to insure that the corporation's interests were not prejudiced by the managers' failure to abide by laws or to make necessary payments. Magnacca Dep. at 18–19, 27, and other references thereto in VII–B,2 *supra.* And, as the Court has noted in Part VII–B, *supra,* the financial interest or benefit prong has been satisfied as well.

The plaintiffs have established facts sufficient to sustain judgment in their favor. Thus, even though defendant Magnacca invokes mechanistic, conclusory denials of very few of the material facts in his affidavit, his own deposition establishes those very facts. Therefore, under the *Biechele* standard, *supra,* 747 F.2d at 215, the Court, even construing those facts most favorably to defendant Magnacca, concludes that "there can be but one reasonable conclusion ..." *Anderson, supra,* 477 U.S. at 250–51, 106 S.Ct. at 2511. In short, the evidence on the only issue in contention does not present "a sufficient disagreement to require submission to a jury [; rather] it is so one-sided that one party must prevail as a matter of law," *Id.* at 251–52, 106 S.Ct. at 2512. There is no genuine issue of material fact, and the plaintiff is entitled to summary judgment against defendant Magnacca.

## VIII.

The plaintiffs have asked the Court to grant three types of relief: 1) an injunction precluding the defendants from repetition of copyright infringement, 2) statutory damages under 17 U.S.C. § 504(c)(1), and 3) an award of court costs and attorney's fees. The defendant has not responded on these issues.

### A.

Under 17 U.S.C. § 502(a) this Court may grant a permanent injunction "on such terms as it may deem reasonable to pre-

vent or restrain infringement of a copyright." In the Collins affidavit, the plaintiffs have established that they repeatedly have asserted their rights, receiving only a series of unfulfilled promise from defendant Magnacca. Collins Aff., Exh. 3, ¶¶ 6–9. Indeed, Magnacca, in his own deposition acknowledges that even after he was not directly managing Guido's, he continued in a duplicitous course of communications with plaintiffs' agent, Magnacca Dep. at 49, and took no steps either to apprise the contract managers of the copyright matters of prevent continued violation of same, *Id.* at 27, 31–32, 49, even though he was regularly present and had the right and ability to take steps to prevent such violations. As the Eighth Circuit has noted, "courts traditionally have been willing to grant permanent injunctions once liability is established and a continuing threat to the copyright exists." *National Football League v. McBee & Bruno's, Inc.,* 792 F.2d 726, 732 (8th Cir.1986), *citing Pacific v. Southern Co., Inc. v. Duncan,* 744 F.2d 1490, 1499 (11th Cir.1984), *cert. denied* 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985). The Court finds: that defendant Magnacca has violated the plaintiffs' rights; that Guido's continued to promote public performances without an ASCAP license even after the filing of this action, Collins Dep., Exh. 3, ¶ 13; and that unless enjoined, the defendant is likely to continue to infringe upon plaintiffs' rights. Thus, the plaintiffs are entitled to injunctive relief. *Music City Music v. Alfa Foods, Ltd.,* 616 F.Supp. 1001, 1003 (E.D.Va.1985). Accordingly, the Court hereby ORDERS defendant Magnacca, personally as President of Speakeasy Enterprises (together with any person or persons acting in concert with him), to cease and desist from infringing conduct and to direct any managers under contract with him or the corporation to cease and desist from promoting, fostering, or permitting any unlicensed performance of the plaintiffs' copyrighted compositions.

### B.

■ Because it recognized the difficulty of ascertaining actual damages in copyright infringement cases, yet wished to secure sufficient compensation for composers, performers, and artists, Congress has permitted plaintiffs to elect, prior to final judgment, statutory damages in lieu of actual damages. 17 U.S.C. § 504(c)(1). Plaintiffs made such an election in their complaint at p. 5. The statute authorizes an award of damages, per infringement, of not less than $250.00 nor more than $10,-000 "as the Court considers just." *Id.* Plaintiffs have priced justice at $2,000 for each of the two proved infringements. Brief in Support of Motion for Summary Judgment, at 16–17. Defendants are silent on this matter. This is not a question for a jury, according to the dominant view. *Rodgers v. Eighty–Four Lumber Co.,* 623 F.Supp. 887, 888–89 (1985). While some maintain that there is a Seventh Amendment right to a jury trial, other hold that this is more in the nature of proceeding in equity. *Id.* at 888–89. In any case the Court need not resolve this debate here, for the defendant has not made a jury demand and under Rule 38(d) of the Federal Rules of Civil Procedure, he has waived that right if it did exist. Thus, the Court is satisfied that in the case at bar, it has an independent duty to ascertain what it considers "just." 17 U.S.C. § 504(c)(1).

The first consideration is that the "defendant should not reap a benefit from its violation of the copyright laws." *Rodgers v. Eighty Four Lumber Co.,* 623 F.Supp. 889, 892 (W.D.Pa.1985) (hereinafter *Rodgers II* ). Unrebutted is plaintiffs' claim that they have expended $510.92 to cover the cost of sending ASCAP investigators to document the infringements in this action. Collins Affidavit, Exh. 3, ¶ 11. In addition, the licensing fees that were avoided by defendants (up until the motion for summary judgment was resubmitted) totalled $1,761.55. *Id.,* ¶ 10. The aggregate of the above amounts is $2,272.47. In their brief, plaintiffs cite several unreported cases from U.S. District Courts in Ohio, one of which set $2,000 per infringement but most of which settled upon the equally round figure of $1,000 per infringement. In the case *sub judice* there were two infringe-

ments. If the Court were to use the $1,000 figure, it would not be doing substantial justice because the total would be less than the aggregate measure of the detriment to the plaintiffs, and the Court feels the duty to assert the message that it should "cost[ ] less to obey the copyright laws than to violate them." *Music City, supra,* 616 F.Supp. at 1003. Thus, initially, the Court determines that it should award more than $1,000 per infringement but no more than $2,000, the plaintiffs' request.

Next, the Court considers whether "the infringements were deliberate and wilful; they continued after many warnings and ... defendant avoided responses to many notices and did not negotiate for a license in good faith." *Rodgers II,* 623 F.Supp. at 892. The findings in *Rodgers II* parallel many of the Court's findings here. Deterring such conduct is an appropriate consideration when contemplating the Court's role in fulfilling the constitutional authorization for Congress "To promote the Progress of Science and Useful Arts, by securing for Limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Art. I, § 8. On balance, the Court awards $1,500 per infringement, or $3,000 in toto, an amount that modestly exceeds the licensing fee and plaintiffs' investigative expenses. This, coupled with the award of costs and fees below, should serve dual purposes under the copyright laws, compensation for creativity and deterrence from infringement. *Russell v. Price,* 612 F.2d 1123, 1132 n. 25 (9th Cir. 1979).

### C.

Congress has provided that the Court "in its discretion may allow the recovery of full costs [and] also may award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. At the heart of an award of costs and fees is the notion that plaintiffs should remain whole from their recovery, with the wrongdoing party bearing the burden of the costs of the litigation. As a result, awards of fees in copyright cases are commonplace, especially where, as here, statu-tory damages barely equal plaintiffs' lost licensing fees, outlays for investigation, and incalculable administrative expenses. The circumstances here are not unlike those in *Milene Music, supra:*

> The defendants have deliberatory and knowingly infringed upon plaintiffs' copyrights; and subsequent to such infringement, have forced the plaintiffs to engage lawyers and to resort to the courts to enforce their proprietary interests in the copyrights. The defendants, in the Court's view, have come forward with no justification for their actions, nor any colorable grounds whatever upon which defense or mitigation could be predicated.

551 F.Supp. at 1297. That set of factors, said the court, "fairly cries out for an award of attorneys' fees." *Id.* at 1298. So, too, here.

The *Milene Music* court also set forth the circumstances that courts should consider when awarding fees in copyright cases:

> (i) whether the plaintiffs' counsel had the benefit of a prior judgment or decree in a case brought by the government; (ii) standing of both parties' counsel at the bar; (iii) the time and labor spent on the case; (iv) the magnitude and complexity of the case; (v) the responsibility undertaken; (vi) the amount recovered; (vii) the work done and the time expended by the prevailing party's attorneys, and the reasonableness of the time so spent; and (viii) what counsel would likely charge as a reasonable fee to the prevailing litigants.

*Id.* This Court considers these standards fair and reasonable. In the case *sub judice,* plaintiffs' counsel had no benefit of a prior judgment in a government-brought case; counsel for plaintiffs is an established member of the bar with significant experience in copyright matters with AS-CAP in this and other United States Courts (Memorandum in Support of Motion to Participate as Co-Counsel); the time and labor spent on this case was calculated by plaintiffs' counsel at 30 hours, a figure that is unchallenged by defendant; while copy-

right expertise was necessary for this case, it was of no special magnitude or complexity; the responsibility undertaken was ordinary; the amount awarded to plaintiffs was restrained in contemplation of an award of attorneys' fees; thirty hours was a reasonable figure for the time expended by plaintiffs' attorneys, especially since that figure, submitted in May 1987, was not amended subsequently to include work performed on the Resubmitted Motion for Summary Judgment and on Plaintiffs' Reply Brief; counsel's stated hourly fee is unchallenged by plaintiffs, is reasonable, and is consistent with that of counsel with similar experience and expertise. In setting the statutory damages for plaintiffs, the Court previously calculated that they would be reimbursed by an award of fees. Unlike a standard contingent fee arrangement, cases where attorney fee awards are authorized contemplate that the work of the attorneys vindicates some broader public interest, here the constitutionally stated interest in securing protection of the creative arts. While the requested fees equal the statutory damages awarded, the United States Court of Appeals for the Ninth Circuit has noted that even a $10,000 award of fees that might seem generous in comparison with an award of $3,700 damages was not unreasonable in a copyright case, considering the work entailed. *Russell v. Price, supra,* 612 F.2d at 1132. Accordingly, the Court awards $3,000.00 attorneys fees to plaintiffs' counsel.

Plaintiffs are also entitled to costs. In their Brief in Support of the Motion for Summary Judgment, at 18, plaintiffs request "attorney's fees and costs expended in the amount of $3,510.92." Having sought $3,000.00 in attorney's fees, *Id.* at 17, the remaining $510.92 looks suspiciously like the $510.92 investigatory expense incurred by ASCAP that plaintiff already asked the Court to include, *Id.* at 16, and which the Court did include, *supra,* at VIII–B, in its contemplation of statutory damages. Accordingly, the Court awards costs to plaintiffs, but said costs shall not include the $510.92 item.

### IX.

In conclusion, the Court GRANTS the plaintiffs' Motion for Summary Judgment against defendant Magnacca, and enjoins defendant Magnacca from the conduct noted above, GRANTS plaintiffs $3,000.00 in statutory damages plus limited costs, and GRANTS counsel for plaintiffs $3,000.00 in attorneys' fees.

IT IS SO ORDERED.