**DREAM DEALERS MUSIC, et al., Plaintiffs,**

v.

**Ellis PARKER, d/b/a Linden Radio Joint Venture, Defendant.**

**Civil Action No. 95–0345–RV–M.**

United States District Court,
S.D. Alabama,
Southern Division.

May 6, 1996.

---

James W. Gewin, Frank Galloway, III, Brantley, Arant, Rose & White, Birmingham, AL, for plaintiffs.

Ellis J. Parker, Northport, AL, Pro Se.

T. Julian Motes, and Matthew A. Vega, Mobile, AL, for Third–Party Defendant.

### ORDER

VOLLMER, District Judge.

This is an action for infringement of copyright by the unauthorized public performance of four songs owned by plaintiffs by broadcast over radio station WNPT–FM in Linden, Alabama, on April 26, 1993. Plaintiffs seek the remedies provided by the United States Copyright law; specifically, injunctive relief, an award of statutory damages, costs, and reasonable attorneys's fees.

Pending before the court are plaintiffs's "motion for summary judgment as to their complaint and ... motion to dismiss defendant Ellis J. Parker's counterclaim" (tab 15; *see also* brief and supporting materials at tab 16), third-party defendant Lawson's "motion to dismiss third-party complaint" (tab 21; *see also* tab 22), defendant Parker's "motion to deny the plaintiffs'[s] motion for summary judgment on both the plaintiffs'[s] complaint and the defendant's counterclaim" (tab 24; *see also* supporting brief at tab 25), defendant/third-party plaintiff Parker's "motion in opposition to motion to dismiss third-party complaint" (tab 26), plaintiffs's "reply memorandum in support of their motion for summary judgment and to dismiss counterclaim" (tab 28), and plaintiffs's "supplemental affidavit in support of [their] motion for summary judgment and to dismiss counterclaims" (tab 29). The court has duly considered the foregoing matters. Having done so, the court concludes, for the following reasons, that the plaintiff's motion for summary judgment on the copyright infringement claims and on Parker's abuse of process counterclaim, and motion to dismiss the antitrust counterclaims, are due to be granted. All remaining claims (*i.e.*, all claims asserted in the third-party complaint) shall be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

### Background

The facts giving rise to the plaintiffs's complaint are not complex. Plaintiffs are the owners of valid copyrights in the four musical compositions at issue in this lawsuit: "Lady Soul," "Mister Magic," "Inner City Blues (Makes Me Wanna Holler)," and "Summertime." As such, plaintiffs also are members of the American Society of Composers, Authors, and Publishers ("ASCAP"), an unincorporated membership association comprised of more than 60,000 writers and publishers of musical compositions. ASCAP operates as a performing rights licensing organization. Each plaintiff in this action has granted ASCAP a nonexclusive license to authorize the non-dramatic public performances of the members's copyrighted musical compositions.

Defendant Ellis J. Parker ("Parker"), a licensed attorney, is a citizen of the State of Alabama and a resident of this judicial district. In as early as 1991, Parker was engaged in the business of operating a commercial radio station in Tuscaloosa, Alabama, known by the call letters WNPT–AM, through WNAR, Inc., a corporation of which Parker is the sole shareholder, CEO, and president.

In early 1991, Parker obtained FCC approval to operate a second radio station, WNPT–FM. He began operating that station in March 1991, in Linden, Alabama, doing business as "Linden Radio Station Joint Venture."

For at least a portion of the time Parker owned and operated WNPT–AM, the station was duly licensed to broadcast musical compositions in the ASCAP repertoire. Parker sold the station to the third-party defendant,

James W. Lawson ("Lawson") in early 1993. At the time of the sale, Parker owed license fees of approximately $3,400 to ASCAP. According to Parker, as part of the sales agreement, Lawson contractually agreed to pay those fees.

Parker did not obtain an ASCAP license for WNPT–FM when he began operating that station. Beginning in March 1991, when Parker established the station, and continuing for more than two years, ASCAP attempted without success to persuade Parker to enter into a license agreement which would have enabled him lawfully to perform ASCAP's music as part of the programming broadcast over the station. During that period, ASCAP considered WNPT–FM to be *de facto* licensed. It attempted to collect license fees for the period of the *de facto* license and to encourage Parker to enter into a prospective license agreement.

On April 2, 1993, following ASCAP's repeated attempts to collect license fees and a prospective license agreement from Parker, ASCAP terminated Parker's *de facto* license agreement for default. Thereafter, ASCAP repeatedly offered to reinstate the terminated license if Parker would pay the license fees owed for the period of the *de facto* license. ASCAP's efforts were unsuccessful.

Once it became clear that Parker would not accept ASCAP's license offers, ASCAP hired an independent investigator, Dorothy Glaze ("Glaze"), to make tape recordings of the station's broadcasts. Glaze made tape recordings of WNPT–FM's broadcasts on April 26, 1993, between approximately 11:30 a.m. and 4:00 p.m., and 6:30 p.m. and 9:30 p.m., and on April 27, 1993, between approximately 6:30 a.m. and 11:00 a.m., at the Holiday Inn in Tuscaloosa, Alabama. The four songs at issue in this action were recorded by Glaze from WNPT–FM's April 26, 1993, radio broadcast. It is undisputed that Parker owned WNPT–FM, and that the station did not have an ASCAP license, on that date. It also is undisputed that Parker did not have permission from the individual plaintiffs or their agents to perform those copyrighted musical compositions on that date.

The plaintiffs filed this copyright infringement action on May 2, 1995. Around that time, they made repeated attempts to settle the matter. At one point, ASCAP, offered to grant Parker a prospective license for WNPT–FM if Parker would pay all of the license fees he owed during the *de facto* license period for WNPT–FM (from March 1991, to April 2, 1993: $4,823.88) *and* the license fees he owed for WNPT–AM for the period of time that that station was unlicensed prior to its sale (approximately $3,400). Parker refused that offer.

Instead, in late February 1995, Parker paid ASCAP only $4,823.88, the amount he owed for the *de facto* license period for WNPT–FM. The payment was made with the clear understanding by ASCAP, unequivocally communicated to Parker, that it would *not* resolve the copyright infringement claims made the basis of this suit. Parker did not pay, and, to date, has not paid, license fees for the period of time covering the date of those alleged infringements.[1]

ASCAP offered to license WNPT–FM prospectively from April 2, 1993, upon Parker's payment of applicable license fees. That offer was *not* conditioned on Parker's payment of outstanding license fees for WNPT–AM; however, it was made with the clear understanding that those fees would still be due and owing *and* with the further understanding that the purchase of the prospective license would not resolve the claims made the basis of this suit.

---

1. In his response to the plaintiffs's motion for summary judgment, Parker asserted that he owed a negligible amount of license fees for the period of time covered by the *de facto* license, that he, in fact, overpaid ASCAP for that license, and that the overpayment, if properly applied to the period of time post *de facto* termination (*i.e.,* after April 2, 1993) would result in his having been licensed on the date on which the alleged infringements occurred. Not only is this argument specious, but it also is completely without evidentiary support. *See* court's order dated May 3, 1996, by which the evidentiary materials submitted by Parker in opposition to plaintiffs's motion for summary judgment were stricken. Instead, under the undisputed evidence, it is clear that WNPT–FM did not have an ASCAP license on April 26, 1993, and that Parker broadcast the four songs at issue in this case over WNPT–FM, without having the authorization to do so.

Since this suit was filed, Parker has continued to broadcast ASCAP musical compositions over WNPT–FM, without a license or other authorization. If WNPT–FM had been properly licensed by ASCAP through February 29, 1996, Parker would have owed AS-CAP more than $7,000 in license fees.

### Discussion [2]

#### A. Plaintiffs's Copyright Infringement Claims

##### 1. Standard of Review on Motion for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Rice v. Branigar Organization, Inc.*, 922 F.2d 788, 790 (11th Cir.1991). The clear language of Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

> The party moving for summary judgment bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991) (Cox, J.); *see Mercantile Bank & Trust, Ltd. v. Fidelity & Deposit Co.*, 750 F.2d 838 (11th Cir.1985). At all times, however, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable infer-

ences and resolving all reasonable doubts in its, her, or his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987). The district court cannot resolve factual disputes by weighing conflicting evidence. *Tippens v. Celotex Corp.*, 805 F.2d 949 (11th Cir.1986), *reh'g den.*, 815 F.2d 66 (1987). If reasonable minds might differ on the inferences arising from undisputed facts, then the court must deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust*, 750 F.2d at 841).

With respect to issues on which the non-moving party would bear the burden of proof at trial, the moving party may satisfy its initial burden in one of two ways. First, bearing in mind that "the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge [its] initial responsibility," it "simply may show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116–17 (11th Cir.1993). "Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Id.* at 1116. If the moving party fails to discharge its initial burden,

> then the motion must be denied and the court need not consider what, if any, showing the non-movant has made.... If, however, the movant carries the initial summary judgment burden in one of the ways discussed above, responsibility then devolves upon the non-movant to show the existence of a genuine issue as to the material fact.

*Id.* (citation and footnote omitted).

For issues on which the non-movant would bear the burden of proof at trial, the

---

2. The court has jurisdiction over this copyright infringement action. 28 U.S.C. § 1338(a). The court assumes, specifically for purposes of ad-

dressing Parker's abuse of process counterclaim, that complete diversity of citizenship exists between the plaintiffs and Parker.

means of rebuttal available to the non-movant vary depending on whether the movant put on evidence affirmatively negating the material fact or instead demonstrated an absence of evidence on the issue. Where the movant did the former, then the non-movant must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated. Where the movant did the latter, the non-movant must respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence.... Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency....

*Id.* (citations omitted). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990); *Earley v. Champion International Corp.,* 907 F.2d 1077 (11th Cir.1990).

Plaintiffs have attempted to discharge their burden on summary judgment by adducing evidence in support of their claims for relief. They also have adduced evidence in support of their contention that Parker will be unable to prevail on his affirmative defenses at trial. Those defenses are waiver, estoppel, and copyright misuse.

### 2. *Analysis*

In order to establish that their copyrights have been infringed, the plaintiffs must prove:

(1) The originality and authorship of the songs allegedly infringed;

(2) compliance with the formalities of the Copyright Act;

(3) plaintiffs's ownership of the copyrights of the relevant compositions;

(4) defendant's public broadcast of the compositions; and

(5) defendant's failure to obtain permission from the plaintiffs or their representatives for such performance.

*See, e.g., Major Bob Music v. Stubbs,* 851 F.Supp. 475, 479 (S.D.Ga.1994); *Quartet Music v. Kissimmee Broadcasting, Inc.,* 795 F.Supp. 1100, 1102 (M.D.Fla.1992); *Chi–Boy Music v. Towne Tavern, Inc.,* 779 F.Supp. 527, 529 (N.D.Ala.1991); *Morley Music Co. v. Cafe Continental, Inc.,* 777 F.Supp. 1579, 1582 (S.D.Fla.1991).

■ In this case, there is no genuine issue of material fact relating to plaintiffs's evidence of originality and authorship, compliance with the statutory formalities of the Copyright Act, and ownership of the works allegedly infringed. Plaintiffs have filed copies of the copyright registration certificates and copies of all relevant assignments relating to the four songs at issue. These documents comprise prima facie evidence of the first three elements required to be established. 17 U.S.C. § 410(c); *see Major Bob,* 851 F.Supp. at 479; *Quartet Music,* 795 F.Supp. at 1102. Parker does not dispute plaintiffs's evidence relating to these elements.

■ Plaintiffs also have offered uncontradicted proof of infringing performance of the four songs at issue on the date alleged. Glaze tape recorded each song from WNPT–FM's April 26, 1993, broadcast. An in-house ASCAP musical expert thereafter identified the songs as being those listed in the complaint (*i.e.,* "Lady Soul," "Mister Magic," "Inner City Blues (Makes Me Wanna Holler)," and "Summertime"). Those songs are owned by the plaintiffs and are in ASCAP's repertoire. On the date of the broadcast, WNPT–FM was not formally or *de facto* licensed by ASCAP, and Parker otherwise did not have permission from the plaintiffs or their agents to play the song. A separate infringement occurred with the broadcast of each song, for which Parker is personally liable.[3]

---

**3.** There is no question in this case about Parker's individual liability for the infringing conduct of WNPT–FM. Under the Copyright Act, "an indi-

vidual who is the dominant influence in a corporation, and through his position can control the acts of that corporation"—in this case, Parker—

Parker's affirmative defenses of waiver and estoppel are inapplicable under the facts of the case. The court assumes Parker's position to be that plaintiffs somehow are estopped from pursuing their claims, or have waived their right to do so, because ASCAP engaged in protracted efforts to reach a licensing accommodation with Parker prior to filing suit *or* because ASCAP, at one time, attempted to link settlement of this suit with Parker's agreement to pay past-due license fees for WNPT–FM *and* WNPT–AM.

■ Neither defense applies. "For estoppel to apply in a copyright action, the copyright owner must be aware of the infringing conduct and yet act in a way that induces the infringer reasonably to rely upon such action to his detriment." *Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1228 (7th Cir.1991) (citing *United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988)). ASCAP has adduced evidence reflecting the extensive and prolonged efforts it made to persuade Parker to comply with the Copyright Act by obtaining a license to broadcast works within ASCAP's repertoire. At no point did ASCAP unduly neglect or delay enforcing the its rights and protecting the rights of the plaintiffs in this case. AS-CAP informed Parker soon following the April 26 broadcast that it had evidence of infringing conduct, and, throughout its negotiations with Parker, made clear that suit could and would be brought against him for copyright violations. The record fully supports the conclusion that ASCAP and the plaintiffs did nothing to mislead Parker.

■ For the waiver defense to apply, the plaintiffs must have acted or failed to act in a way which could be construed as a relinquishment of their rights under the Copyright Act. *See Rilting Music, Inc. v. Speakeasy Enterprises, Inc.*, 706 F.Supp. 550, 553 (S.D.Ohio 1988). No such evidence of relinquishment appears in this case. AS-CAP, acting on behalf of the plaintiffs, engaged in an "aggressive and unyielding pattern" to pursue the plaintiffs's rights. *Id.*

There is absolutely no evidence to the contrary.

■ Parker's defense of copyright misuse apparently is premised on Parker's belief that ASCAP violated the consent decree in *United States v. ASCAP*, 1950 Trade Cas. (CCH) ¶ 62,595 (S.D.N.Y.1950), when it offered to settle the instant dispute if Parker paid past-due license fees for WNPT–FM and WNPT–AM. It is difficult to see how this conduct, to which the plaintiffs admit, constitutes copyright misuse. ASCAP is not obligated to enter into a new license with a music user who owes license fees for prior, licensed periods. *See Collins Court Music Inc. v. Pulley*, 704 F.Supp. 963, 967 (W.D.Mo. 1988); *Brockman Music v. WRXV, Inc.*, Civ. No. 84–0156–P (D.Me. May 15, 1985).

Plaintiffs seek three types of relief from Parker's infringing conduct: (1) an injunction precluding Parker from further infringing conduct; (2) statutory damages under 17 U.S.C. § 504(c)(1); and (3) and award of court costs and attorneys's fees. The court shall address these elements of damages *seriatim.*

■ Under 17 U.S.C. § 502(a), the court may grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." " 'An injunction is properly imposed when there is a substantial likelihood of further infringement of plaintiff[s]'s copyrights.' " *U.S. Songs*, 771 F.Supp. at 1229 (quoting *Hickory Grove Music v. Andrews*, 749 F.Supp. 1031, 1040 (D.Mont.1990)). The evidence in this case is clear: ASCAP repeatedly informed Parker of infringing broadcasts by WNPT–FM. In fact, it specifically informed Parker that WNPT–FM violated the plaintiffs's copyrights by broadcasting the four songs at issue in this case without authorization. Notwithstanding Parker's longstanding knowledge of WNPT–FM's infringing conduct and ASCAP's protracted efforts to persuade Parker to obtain a license to broadcast compositions in ASCAP's reper-

---

may be held liable for the corporation's infringing conduct "even in the absence of the individual's actual knowledge of the infringements." *Quartet Music*, 795 F.Supp. at 1103. Parker,

thus, is liable for the WNPT–FM broadcasts even if he was unaware of the infringing broadcasts that occurred on April 26.

toire, Parker wilfully and flagrantly persisted to engage in infringing conduct. ASCAP, in fact, has documented Parker's unlawful conduct as recently as this year. Under all of those circumstances, the court believes that a substantial likelihood exists that Parker will continue to infringe plaintiffs's copyrights if an injunction is not granted. Accordingly, the court hereby **ENJOINS** defendant Parker from further infringing the plaintiffs's copyrights. The injunction shall be permanent, or shall last until such time as Parker obtains a license to perform plaintiffs's copyrighted material.

■ A plaintiff alleging copyright infringement may elect either actual or statutory damages under 17 U.S.C. § 504. Section 504(c)(1) provides that where statutory damages are elected, the trial court may, in its discretion, award damages of between $500 and $20,000 for each copyright infringed. 17 U.S.C. § 504(c)(1). In the case of a wilful violation, "the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000." 17 U.S.C. § 504(c)(2). " '[C]ourts have wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.' " *U.S. Songs,* 771 F.Supp. at 1229 (quoting *Hickory Grove,* 749 F.Supp. at 1039 (internal quotations omitted)). In this case, plaintiffs's "have priced justice" at $5,000 for each of the four proved infringements. *Rilting Music,* 706 F.Supp. at 557.

■ This court is not without guidance in determining what is a just damage award under the circumstances. "Factors to be considered include: (1) the expenses saved and profits reaped by the defendant in connection with the infringements; (2) the revenues lost by the plaintiffs as a result of the defendant's conduct; and (3) the infringer's state of mind—whether willful, knowing or merely innocent." *Major Bob,* 851 F.Supp. at 481 (citing *Nick–O–Val Music Co. v. P.O: S. Radio, Inc.,* 656 F.Supp. 826, 829 (M.D.Fla.1987)). Foremost, the court must award an amount that will put the defendant on notice that it costs more to violate the copyright law than to obey it. *U.S. Songs,* 771 F.Supp. at 1229.

The evidence in this case indicates that ASCAP worked diligently over the past five years to protect the copyright interests of its constituent members, including the plaintiffs, against infringing conduct by Parker. Parker clearly was on notice during that entire period of his need for an ASCAP license. Nevertheless, he knowingly and intentionally chose to infringe upon the plaintiffs's copyrights. His conduct is in no way mitigated by his belated payment of fees owed for the period of the *de facto* license. Had he been licensed from 1991 through February of this year, his license fees would have totaled approximately $7,000.

Under all of the circumstances, the court finds plaintiffs's request for statutory damages of $5,000.00 per violation, or a total of $20,000—an amount just less than three times what Parker would have paid for WNPT–FM to be licensed from 1991 through February of this year—to be modest, just, and appropriate. *See Major Bob,* 851 F.Supp. at 481 (award of three times the amount of what license would have cost considered appropriate under 17 U.S.C. § 504(c)(1)). Accordingly, plaintiffs shall recover statutory damages in the total amount of $20,000 from Parker.

■ The plaintiffs further request reimbursement for costs incurred in bringing this action, including reasonable attorneys's fees. Costs and reasonable attorneys's fees may be awarded, in the court's discretion, to the prevailing party in an infringement action. 17 U.S.C. § 505.

"The Eleventh Circuit has adopted a lenient standard for granting fees, concluding that the [Copyright Act] does not condition an award of costs and fees on the showing of a frivolous suit or a willful infringement...." *Major Bob,* 851 F.Supp. at 482 (citing *Original Appalachian Artworks, Inc. v. Toy Loft,* 684 F.2d 821, 832 (11th Cir.1982)).

[T]he Eleventh Circuit has held that a district court need not find frivolousness nor willful infringement, but may take such factors into consideration. The Third Circuit, in a case cited approvingly by the Supreme Court ..., instructed the district court to examine several nonexclu-

sive factors such as 'frivolousness, motivation, objective reasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' ... In a frequently cited district court case, the District Court of Connecticut held that the following factors justified a denial of attorney fees to a prevailing plaintiff: (1) the presence of a complex or novel issue of law litigated by the defendant in good faith; (2) the defendant's status as an innocent rather than a willful or knowing infringer; (3) bad faith on the plaintiffs's part in prosecuting the action; or (4) a good faith attempt by the defendant to avoid infringement.

*Id.* at 482–83 (citations omitted).

The equities of this case justify an award of costs and attorneys's fees. Parker's liability is unquestionable both legally and factually. Parker repeatedly ignored ASCAP's many entreaties and warnings that he and WNPT–FM were in violation of the law and needed to obtain a license to perform works in ASCAP's repertoire (including the songs at issue in this case). Finally, Parker made no attempt whatsoever to avoid infringement. His attempt partially to resolve his dispute with ASCAP prior to the commencement of this action by paying fees owed for WNPT–FM's *de facto* license period is inconsequential, in the court's view, to this analysis. Parker's attitude toward obtaining a license, at best, may be characterized as "cavalier." *Major Bob,* 851 F.Supp. at 483.

Plaintiffs's counsel submitted an affidavit establishing that attorneys's fees and costs incurred by plaintiffs in prosecuting this action total $8,835.72 ($4,200 in attorney's fees for attorney Paula Katz; $4,635.72 in combined costs and attorneys's fees for attorneys Gewin and Galloway). The court knows of no reason why it should find these fees and costs to be unreasonable. Accordingly, the court hereby awards plaintiffs attorneys's fees and costs pursuant to 17 U.S.C. § 505 in the total amount of $8,835.72.

### B. *Defendant's Counterclaims for Antitrust Violations, Copyright Misuse, and Abuse of Process*

■ In the first two counts of his self-styled counterclaim, Parker charges *ASCAP* with antitrust violations. ASCAP is not a party to this action, and there is no contention by Parker that the named plaintiffs conspired with ASCAP to commit antitrust violations. Because ASCAP is the real party in interest to those counterclaims and, further, because Parker has not sought to add ASCAP as a party even though he has had ample time in which to do so, the counterclaims are due to be, and hereby are, **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief against the named plaintiffs.

Parker's third counterclaim for relief—for abuse of process—is asserted against the plaintiffs. Plaintiffs have moved for summary judgment on this claim; the applicable standard of review is set forth above.

■ Under Alabama law, in order to prevail on an abuse of process claim, a plaintiff must prove (1) malice; (2) the existence of an ulterior purpose; and (3) the wrongful use of process. *Triple J. Cattle, Inc. v. Chambers,* 621 So.2d 1221, 1225 (Ala.1993). According to Parker, the plaintiffs are pursuing this action maliciously, not for the purpose of vindicating the copyright infringements, but for the improper purpose of using the federal court to collect a bad debt (*i.e.,* license fees owed by Parker).

■ Pretermitting consideration of the whether a genuine factual issue exists with respect to the first two elements, it is apparent that Parker will be unable, as a matter of law, to establish the third element of this claim at trial. Parker charges that the plaintiffs misused the legal process by forcing him to choose to pay a debt that he contends he does not owe *or* face this copyright infringement action. At most, Parker complains about an offer of settlement that was made around the time suit was filed. The court fails to see how that offer constitutes a misuse of the legal process. The plaintiffs have valid copyright infringement claims against Parker which they certainly had an entitlement to pursue in court. They generously offered Parker the opportunity to avoid liability for copyright infringement by attempt-

ing to settle the matter on terms ultimately very favorable to Parker. Plaintiffs have not used or misused the legal process to collect Parker's bad debts; rather, they have used it for the proper purpose of vindicating their legal rights under the Copyright Act. Plaintiffs are entitled to relief on this counterclaim as a matter of law. Accordingly, the claim is due to be, and hereby is, **DISMISSED with prejudice.**

**C. Defendant/Third Party Plaintiff's Claims for Breach of Contract and Fraud**

Each of the counts of the so-called "third-party complaint" [4]—for breach of contract—arises under state law. It does not appear that the court has an independent basis of jurisdiction over those claims (i.e., there is not diversity of citizenship between Parker and Lawson). In light of the fact that the court has dismissed all of the claims over which it has original jurisdiction, the court hereby exercises its discretion not to exercise supplemental jurisdiction over the claims asserted in the third-party complaint. Pursuant to 28 U.S.C. § 1367(c)(3), those claims are hereby **DISMISSED without prejudice.**

### Conclusion

In light of the foregoing, the court concludes that plaintiffs's motion for summary judgment on the copyright infringement claims and on Parker's abuse of process counterclaim is due to be, and hereby is, **GRANTED.** Further, plaintiffs's motion to dismiss defendant Parker's two antitrust counterclaims for failure to state a claim for relief is due to be, and hereby is, **GRANTED.** Each of the claims asserted in the third-party complaint is due to be, and hereby is, **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c). Final judgment shall be entered by separate order.

### JUDGMENT

In accordance with this court's order dated May 6, 1996, the court hereby **ORDERS** as follows:

1. Plaintiffs's motion for summary judgment against defendant Parker is **GRANTED** as it relates to plaintiffs's claims for copyright infringement. **FINAL JUDGMENT** is hereby entered on those claims as follows:

a. Defendant Parker is hereby **ENJOINED** from further infringing the plaintiffs's copyrights. The injunction shall be permanent, or shall last until such time as Parker obtains a license to perform plaintiffs's copyrighted material;

b. Plaintiffs shall recover statutory damages in the total amount of $20,000 from Parker (i.e., $5,000 per violation);

c. Plaintiffs shall recover attorneys's fees and costs from Parker in the total amount of $8,835.72.

2. Plaintiffs's motion to dismiss Parker's two antitrust counterclaims is **GRANTED.** Accordingly, Parker shall have and recover **NOTHING** from the plaintiffs on those counterclaims, and those counterclaims shall be **DISMISSED with prejudice.**

3. Plaintiffs's motion for summary judgment on Parker's abuse of process counterclaim is **GRANTED.** Accordingly, Parker shall have and recover **NOTHING** from the plaintiffs on that counterclaim, and the counterclaim shall be **DISMISSED with prejudice.**

4. The court hereby exercises its discretion not to exercise supplemental jurisdiction over the claims asserted in the third-party complaint. Pursuant to 28 U.S.C. § 1367(c)(3), those claims are hereby **DISMISSED without prejudice.**

---

**4.** In the court's opinion, it is highly questionable whether Parker's claims against Lawson are properly asserted via a third-party complaint. See Fed.R.Civ.P. 14(a); see also United States v. Olavarrieta, 812 F.2d 640, 643 (11th Cir.1987), cert. denied, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). The court need not definitively resolve the issue, however, in light of the court's disposition of Parker's claims against Lawson.